MAXWELL, JUSTICE, FOR THE COURT:
 

 ¶ 1. The trial court granted the Lincoln County Board of Supervisors' and the City of Brookhaven, Mississippi's motions to dismiss Samuel Wilcher, Jr.'s personal injury suit, finding both governmental entities enjoyed discretionary-function immunity. In doing so, the judge employed this Court's recently created "
 
 Brantley
 
 " test.
 
 [1]
 

 ¶ 2. On appeal, we face head on one of the unintended but predicted consequences of
 
 Brantley
 
 -that the test forces parties and judges to wade through an ever-deepening quagmire of regulations and ordinances to locate "ministerial" or "discretionary" duties, overcomplicating the process of litigating and deciding claims involving governmental entities. Unfortunately, this methodology, though well-intentioned, has over time proved unworkable. Instead of trying to retool the
 
 Brantley
 
 test to somehow make it workable, we concede this short-lived idea, which was meant to be a course correction, has ultimately led this Court even farther adrift. Because the
 
 Brantley
 
 line of cases has not fulfilled its purpose-getting our discretionary-function analysis back on track-we abandon this failed venture. We find it best to return to our original course of applying the widely recognized public-policy function test-the original Mississippi Tort Claims Act (MTCA) test first adopted by this Court in 1999 in
 
 Jones
 
 .
 
 [2]
 

 ¶ 3. Applying the
 
 Jones
 
 test to this case, we hold that Wilcher's claim that County and City employees negligently left an unfinished culvert installation overnight, without warning drivers they had removed but not yet replaced a bridge, is not barred by discretionary-function immunity. Wilcher is not trying to second-guess a policy decision through tort. He is seeking to recover for injuries caused by run-of-the-mill negligence.
 

 ¶ 4. Because, from the face of the complaint, the County and City are not immune, we reverse the grant of their motions to dismiss. We thus remand this case to the trial court for further proceedings consistent with this opinion.
 

 Background Facts and Procedural History
 
 ¶ 5. According to Wilcher's complaint,
 
 [3]
 
 he was driving at night on Washington Street in Brookhaven when his vehicle suddenly crashed into a big hole. This "pit or ditch" was left in the road where the County and City were repairing or constructing a bridge. Wilcher had not been made aware the bridge was under construction. And there were no warning signs, flag persons, lights, or any other devices that would warn Wilcher the bridge or roadway was missing, closed, or under repair or construction. Wilcher's vehicle crashed into the hole, injuring Wilcher and damaging his vehicle.
 

 ¶ 6. After giving the requisite statutory notice,
 
 [4]
 
 Wilcher sued the Lincoln County Board of Supervisors (County) and the City of Brookhaven (City) for negligence. Wilcher alleged both entities-who had been working jointly to replace the bridge with a culvert-had failed in their duty to warn motorists the bridge was closed or under construction.
 
 [5]
 
 This failure, he asserted, violated both entities' statutory duty under Mississippi Code Section 63-3-305 (Rev. 2013). It also fell below the required specifications of the "state manual,"
 
 [6]
 
 showing a reckless disregard for motorists' safety.
 

 ¶ 7. Both the County and City filed motions to dismiss, insisting Wilcher's claims were barred by the MTCA. Specifically, they argued the duty imposed by Section 63-3-305 was discretionary, thus entitling them to discretionary-function immunity.
 
 See
 

 Miss. Code Ann. § 11-46-9
 
 (1)(d) (Rev. 2012). The trial judge agreed and granted both motions to dismiss.
 

 ¶ 8. Wilcher timely appealed. And on appeal, we review de novo the trial court's dismissal based on MTCA immunity.
 
 Fortenberry v. City of Jackson
 
 ,
 
 71 So.3d 1196
 
 , 1199 (Miss. 2011) (applying de novo review to the question of MTCA immunity);
 
 Scaggs v. GPCH-GP, Inc.
 
 ,
 
 931 So.2d 1274
 
 , 1275 (Miss. 2006) (applying de novo review to a motion to dismiss).
 

 Discussion
 

 I. Discretionary-Function Immunity
 

 ¶ 9. Under the MTCA, the default rule is that political subdivisions like Lincoln County and Brookhaven are not immune from tort claims.
 
 [7]
 
 But the Legislature carved out several exceptions, reinstating immunity for certain types of claims.
 
 Miss. Code Ann. § 11-46-9
 
 (1). Relevant to this case is Section 11-46-9(1)(d). This particular section confers "discretionary-function immunity." Under this provision, "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... (d) Based upon the exercise or performance
 or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."
 
 Miss. Code Ann. § 11-46-9
 
 (1)(d).
 

 ¶ 10. The language of this provision is clear enough, but understanding and applying it has at times proved difficult. The Federal Tort Claims Act was enacted decades before the MTCA. And because the MTCA's " Section 11-46-9 appear[ed] to be patterned after
 
 28 U.S.C. § 2680
 
 (a), the 'discretionary function' exception to the Federal Tort Claims Act," this Court originally turned to the federal courts' substantial experience in dealing with discretionary-function immunity.
 
 Jones v. Miss. Dep't of Transp.
 
 ,
 
 744 So.2d 256
 
 , 260 (Miss. 1999).
 

 ¶ 11. This Court found significant that "[t]he United States Supreme Court has recognized that [while] the majority of acts in the day-to-day operations of governmental activities involve the exercise of some form of discretion, ... not all of these acts are protected under the exception."
 

 Id.
 

 Instead, "only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected."
 

 Id.
 

 (citing
 
 United States v. Gaubert
 
 ,
 
 499 U.S. 315
 
 , 322,
 
 111 S.Ct. 1267
 
 , 1273,
 
 113 L.Ed.2d 335
 
 (1991) ). This is because "the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."
 
 Gaubert
 
 ,
 
 499 U.S. at 323
 
 ,
 
 111 S.Ct. at 1273
 
 (quoting
 
 United States v. Varig Airlines
 
 ,
 
 467 U.S. 797
 
 , 814,
 
 104 S.Ct. 2755
 
 , 2765,
 
 81 L.Ed.2d 660
 
 (1984) ).
 

 ¶ 12. Agreeing that the purpose of discretionary-function immunity is not to protect
 
 all
 
 decisions by governmental employees involving some level of discretion but instead only those functions that by their nature are policy decisions, this Court adopted
 
 Gaubert
 
 's "public policy function test."
 
 Jones
 
 ,
 
 744 So.2d at 260
 
 . This test requires "determin[ing] whether governmental conduct is discretionary so as to afford the governmental entity immunity."
 

 Id.
 

 The public-policy function test has two parts. "This Court first must ascertain whether the activity in question involved an element of choice or judgment."
 
 Miss. Transp. Comm'n v. Montgomery
 
 ,
 
 80 So.3d 789
 
 , 795 (Miss. 2012). If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations.
 

 Id.
 

 Only when both parts of the test were met did a government defendant enjoy discretionary-function immunity.
 
 [8]
 

 II.
 
 Brantley
 

 ¶ 13. Four years ago, however, five members of this Court decided to abandon the two-part, public-policy function test. The
 
 Brantley
 
 majority claimed to have detected in Section 11-46-9(1)(d)"a requirement not present in the Federal Tort Claims Act."
 
 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 , 1112-13 (Miss. 2014). So the
 
 Brantley
 
 majority crafted a new and completely different test. The
 
 Brantley
 
 test directed the Court to first "consider the broadest function involved in order
 to make a baseline determination of whether the overarching function is discretionary or ministerial."
 

 Id.
 

 at 1114
 
 . "The Court then must examine any narrower duty associated with the activity at issue to determine whether a statute, regulation, or other binding directive renders that particular duty a ministerial one, notwithstanding that it may have been performed within the scope of a broader discretionary function."
 

 Id.
 

 at 1115
 
 . Conspicuously absent from this new test was any consideration of whether policy factored into the decision.
 

 ¶ 14.
 
 Brantley
 
 's stated intention was to create a more "workable rule" for when discretionary-function immunity applies.
 

 Id.
 

 at 1112
 
 . But in reality, the new test "marked an unwise and unworkable departure from longstanding precedent," and by failing to consider whether the activity in question involved policy, ignored the Legislative intent behind discretionary-function immunity.
 
 Crider v. DeSoto Cty. Convention & Visitors Bureau
 
 ,
 
 201 So.3d 1063
 
 , 1067-70 (Miss. 2016) (Maxwell, J., concurring in result only).
 
 [9]
 
 This case is a poster child for these truths.
 

 ¶ 15. Were we to apply
 
 Brantley
 
 here, we would start with arguably the broadest function possible-the placement of traffic-control devices, which Section 63-3-305 leaves to the discretion of the controlling political subdivision. But we could not stop there, as the trial court did. Instead, we would then have to scour the state manual. After that, we would have to hunt for other regulations and ordinances to see if the narrower duty in question has somehow been "rendered ministerial."
 
 [10]
 
 This tedious and scattered quest exemplifies one of the major criticisms of
 
 Brantley
 
 analysis-that "it overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party's attorney to sift through myriad and sometimes arcane regulations-creating extra layers of proof,
 
 which may have little or no practical effect on the actual negligent act
 
 ."
 
 Crum v. City of Corinth
 
 ,
 
 183 So.3d 847
 
 , 854 (Miss. 2016) (Randolph, P.J., concurring in result only) (emphasis added).
 

 ¶ 16. Here,
 
 Brantley
 
 analysis would require this Court to take a deep dive into the Mississippi Code, the City of Brookhaven's Code of Ordinances, the Mississippi Standard Specifications for Road and Bridge Construction (a/k/a "Red Book"), and the Mississippi Administrative Code to justify what should be blatantly obvious. Both common sense and the common law dictate that if a road crew removes a bridge to install a culvert, leaves a giant hole overnight, and fails to either barricade or sufficiently warn about the gaping hole it created, then the entity in charge could be liable in tort if someone drives his car into the hole. This would certainly be true in the context of a premises-liability claim against a private property owner. So why should it be any different when the government owns or controls the premises? In other words, the government does not have the "discretion"-let alone legislatively conferred discretion-to create a dangerous condition and leave it exposed without warning.
 

 ¶ 17. But the problems with
 
 Brantley
 
 run much deeper than just placing a hodgepodge of local ordinances and regulations
 front and center in our sovereign-immunity analysis. As a result of
 
 Brantley
 
 , what the Legislature intended as a shield-discretionary-function immunity under Section 11-46-9(1)(d) -is flipped on its head and is being used as a sword. Parties are now citing
 
 Brantley
 
 to bring actions based solely on violations of statutes and/or local ordinances or regulations, which they argue impose "ministerial" duties.
 
 See
 

 Horton v. City of Vicksburg
 
 , 2016-IA-1595-SCT (MTCA claim based on the city's alleged failure to enforce its local property-maintenance code). But this practice is certainly not what the Legislature intended. In fact, this approach is completely backwards.
 

 ¶ 18. " Section 11-46-9(1) restores sovereign immunity."
 
 Simpson Cty. v. McElroy
 
 ,
 
 82 So.3d 621
 
 , 624 (Miss. Ct. App. 2011). "It does not in itself create duties."
 

 Id.
 

 Furthermore, regulations do not create causes of action, and the MTCA does not grant a right to recover based on a mere violation of statute or regulation.
 
 Taylor v. Delta Reg'l Med. Ctr.
 
 ,
 
 186 So.3d 384
 
 , 390-91 (Miss. Ct. App. 2016).
 
 [11]
 
 "[T]he general rule is that 'a mere violation of a statute or regulation will not support a claim where no private cause of action exists.' "
 

 Id.
 

 (quoting
 
 Tunica Cty. v. Gray
 
 ,
 
 13 So.3d 826
 
 , 829 (Miss. 2009) ). Despite this,
 
 Brantley
 
 's analysis wrongly zeroes in on applicable regulations and ordinances. And if a regulation was "ministerial," this Court began to presume that the alleged violation of that regulation or ordinance, itself, established a viable cause of action without even questioning if a claim would exist
 
 without
 
 the regulation.
 

 ¶ 19. Though its problems are aplenty, Justice Kitchens continues to defend
 
 Brantley
 
 . He insists "seasoned practitioners and jurists understand" that our law should be confusing. This, he suggests, "is what the lawyers who represent parties and the judges who sort through and decide complex legal issues, often involving myriad statutes, ordinances, and regulations, have done from time immemorial."
 

 ¶ 20. But whether a practitioner is long in the tooth, or fresh out of law school, it is obvious to all who have been involved in these cases recently that the
 
 Brantley
 
 approach is
 
 unnecessarily
 
 complex. It also improperly turns regulations into causes of action, and is not based on the text of Mississippi's Tort Claims Act. But perhaps the most practical truth is that it has made it little more than a gamble when lawyers advise clients whether they have valid tort claims or defenses in MTCA cases. And that is not how our law should operate.
 

 ¶ 21. Attorneys and parties should not have to wait until their case shakes out in the appellate courts to know what the law is. The very reason we apply
 
 stare decisis
 
 is "so that trial courts can make correct decisions and lawyers can properly advise their clients."
 
 United Servs. Auto. Ass'n v. Stewart
 
 ,
 
 919 So.2d 24
 
 , 30 (Miss. 2005). And when attorneys are left unable to advise their clients on the applicability of discretionary-function immunity in the wake of
 
 Brantley
 
 , any
 
 stare decisis
 
 argument for upholding this newly crafted test is seriously undermined.
 
 [12]
 

 ¶ 22. Wilcher's complaint is evidence of the confusion
 
 Brantley
 
 has created. According to his factual allegations, the County and City removed a bridge and failed to warn oncoming motorists the road had not yet been replaced. These allegations support a common-law premises-based claim of failure to warn of a dangerous condition created by the County and City. Yet, Wilcher did not plead his claim as negligent failure to warn.
 
 [13]
 
 Instead, Wilcher apparently found the statutory duty that most closely fit the factual scenario. And he argued the County and City breached the ministerial duties the statute imposed. He then turned to the state manual. He did this to establish a claim that, should the broader statutory function be discretionary, the defendants still had violated mandatory regulatory duties. In other words, even though Wilcher's allegations support an obvious common-law negligence claim against the defendants, under
 
 Brantley
 
 , he was forced to present his claim as a statutory and/or regulatory violation.
 
 [14]
 

 ¶ 23. This leads us to the inescapable conclusion that, instead of being a course correction,
 
 Brantley
 
 has led this Court even farther astray. And this Court finds itself in a deep hole of our own making. But rather than try to dig our way out by further modifying the
 
 Brantley
 
 test, we find the better course is to put down the shovel. We thus abandon and overrule the
 
 Brantley
 
 line of cases and return to our original course of applying the widely-recognized, easily understood, public-policy function test.
 

 III. The Two-Part, Public-Policy Function Test
 

 A. The Mississippi and Federal Discretionary-Function-Immunity Provisions Are Practically Identical
 

 ¶ 24. Though we admit
 
 Brantley
 
 and its progeny, though well-intended, were wrongly decided, Justice Kitchens
 
 doubles down
 
 on his position that we cannot return to
 
 Jones
 
 and the application of the two-part, public-policy function test.
 
 Jones
 
 ,
 
 744 So.2d 256
 
 . To maintain this stance, he clings to what he perceives as a material distinction between our discretionary-function immunity provision, Mississippi Code Section 11-46-9(1)(d), and its corollary in the Federal Tort Claims Act,
 
 28 U.S.C. § 2680
 
 (a). But in reality, there is no difference.
 

 ¶ 25. Just like the MTCA, the FTCA "covers actions for personal injuries 'caused by the negligent or wrongful act or omission of any employee of the Government
 
 while acting
 

 within the scope of his office or employment
 
 .' "
 
 [15]
 

 Sheridan v. United States
 
 ,
 
 487 U.S. 392
 
 , 400,
 
 108 S.Ct. 2449
 
 , 2455,
 
 101 L.Ed.2d 352
 
 (1988) (quoting
 
 Panella v. United States
 
 ,
 
 216 F.2d 622
 
 , 623 (2d Cir. 1954) ) (emphasis removed and added elsewhere).
 
 [16]
 
 Under both statutory schemes, if an employee was acting within the scope of his employment, then he cannot be individually sued. Instead, the plaintiff must sue the government employer, in accordance with Mississippi or federal statute.
 
 Compare
 
 28 U.S.C. § 2679
 
 with
 

 Miss. Code Ann. § 11-46-7
 
 . Conversely, if an employee was acting outside the scope of her employment, then the plaintiff can only sue her individually. The government employer cannot be sued, and the
 
 MTCA or FTCA do not apply
 
 .
 
 [17]
 
 This means Section 11-46-9(1)'s and Section 2680's reinstatements of immunity necessarily do not apply. Therefore, an employee being sued for actions outside the course and scope of his employment cannot take refuge in these provisions, because the entire Act has no application.
 
 See
 

 Sheridan
 
 ,
 
 487 U.S. at 400-01
 
 ,
 
 108 S.Ct. at 2455
 
 (holding Section 2680(h) did not apply to claim against an "an off-duty serviceman, not acting within the scope of his office or employment");
 
 Oliver
 
 , 235 So.3d at 83 (holding defendant employees, whose alleged malicious conduct fell outside the course and scope of their employment, could not "claim one of Section 11-46-9(1)'s exemptions to liability applies").
 

 ¶ 26. So, while the phrase "acting within the course and scope of their employment or duties" does limit discretionary-function immunity, it is inaccurate to say the federal counterpart has no comparable limitation. Taken to its logical conclusion, the
 
 Brantley
 
 position-that our immunity provision has an additional limitation-suggests that federal employees can claim sovereign immunity for actions taken outside the course and scope of their employment, when this is certainly not the case. According to the United States Supreme Court, the waiver-of-immunity exceptions provided under Section 2680 must "be construed to apply
 
 only
 
 to claims that would otherwise be authorized by the basic waiver of sovereign immunity."
 
 Sheridan
 
 ,
 
 487 U.S. at 400
 
 ,
 
 108 S.Ct. at 2455
 
 (emphasis added). And the only claims authorized by the basic waiver of sovereign immunity are "actions for personal injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."
 

 Id.
 

 ¶ 27. Both Section 11-46-9(1) and Section 2680 apply only to claims based on an employee's conduct while acting within the course and scope of his employment.
 

 The Federal statute, Section 2680, precludes any claim:
 

 based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 

 Almost verbatim, the Mississippi statute, Section 11-46-9(1)(d), precludes any claim:
 

 [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]
 

 So we are dealing with essentially the same immunity provision.
 

 ¶ 28. While
 
 Brantley
 
 claimed Mississippi's traditional test ignored the text of Section 11-46-9(1)(d), it is indeed the text-namely its inescapable similarity to Section 2680 -that drives us to conclude
 
 Brantley
 
 's new-found textual "distinction" between our discretionary-function provision and the federal version is simply nonexistent. Our Legislature did not draft Section 11-46-9(1)(d) in a vacuum. Instead, as even the
 
 Brantley
 
 majority had to acknowledge, the Legislature patterned Mississippi's immunity provision after its federal counterpart.
 
 Brantley
 
 ,
 
 152 So.3d at 1112
 
 .
 
 [18]
 

 ¶ 29. Recognizing this, the
 
 Jones
 
 Court-far from being "pernicious"-reasonably looked to the United States Supreme Court for interpretive guidance and adopted its test for when this provision applies.
 
 Jones
 
 ,
 
 744 So.2d at 260
 
 ("adopt[ing] the public policy function test" from
 
 Gaubert
 
 ,
 
 499 U.S. at 322
 
 ,
 
 111 S.Ct. at
 
 1273 ). Reason also dictates that, in light of the fact the purported course corrections have proved more and more unworkable with every case, we should return to this test. The justification for why we had to abandon the
 
 Gaubert
 
 test-that our provision has an additional "acting within the course and scope" requirement-simply fails under scrutiny.
 

 B. Return to the Traditional Public-Policy Function Test
 

 ¶ 30. Mississippi's public-policy function test has two parts. "This Court first must ascertain whether the activity in question involved an element of choice or judgment."
 
 Montgomery
 
 ,
 
 80 So.3d at 795
 
 . If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations.
 

 Id.
 

 Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity. This test, of course, presupposes the court has correctly identified "the activity in question"-the allegedly tortious act giving rise to the claim.
 

 ¶ 31. The County and City insist the placement of traffic-control devices is a "discretionary function" under Section 63-3-305. But what the parties-and Justice Kitchens-miss is that the placement or lack of placement of a traffic-control device is not the government function being challenged. This is not a case, for example, where the plaintiff alleges the County or City decided against installing warning lights or signs at dangerous intersections, and that particular decision contributed to his accident with another vehicle. In such a scenario, it would be arguable that the
 plaintiff was trying to use his tort action to second-guess the government's discretionary policy decision on how best to regulate traffic within the confines of the government's limited resources-something the discretionary-function provision was designed to curb.
 
 [19]
 

 Gaubert
 
 ,
 
 499 U.S. at 323
 
 ,
 
 111 S.Ct. at 1273-74
 
 . But again, that is not what Wilcher is claiming.
 

 ¶ 32. Here, the allegedly tortious act was the construction crew's alleged failure to barricade or warn against the significant drop-off in the road-a condition it created.
 
 [20]
 
 This alleged failure was not the result of noncompliance with Section 63-3-305. And applying the public-policy function test, it certainly was not the result of a policy decision. Rather, if indeed there was such a failure, it was the result of straight-up negligence.
 

 ¶ 33. We admit the public-policy function test is not perfect and has been misapplied in the past. We are particularly mindful of this Court's decision in
 
 Pratt
 
 , which stretched the bounds of "policy" beyond credulity.
 
 Pratt v. Gulfport-Biloxi Reg'l Airport Auth.
 
 ,
 
 97 So.3d 68
 
 , 75 (Miss. 2012) (holding the placement of nonslip tape on tarmac stairs was an operational decision involving economic policy and was thus immune). And we agree with and adopt as part of our public-policy function analysis Chief Justice Waller's dissent from that case.
 

 ¶ 34. Because discretionary-function immunity "protects only governmental actions and decisions based on considerations of public policy," when "applying the discretionary-function exception, this Court must distinguish between
 
 real policy decisions
 
 implicating governmental functions and
 
 simple acts of negligence
 
 which injure innocent citizens."
 

 Id.
 

 at 76
 
 (Waller, C.J., dissenting) (citations omitted) (emphasis added). Thus, "[w]hen reviewing whether a challenged action is afforded immunity, a court's focus is 'on the nature of the actions taken and whether they are susceptible to policy analysis.' "
 

 Id.
 

 (quoting
 
 Gaubert
 
 ,
 
 499 U.S. at 325
 
 ,
 
 111 S.Ct. at
 
 1275 ).
 

 ¶ 35. Wilcher has alleged a "simple act[ ] of negligence," and not a real policy decision, caused his injury. Therefore, the County and City cannot take refuge in discretionary-function immunity.
 

 Conclusion
 

 ¶ 36. For the reasons stated in this opinion, as well as those voiced by the prior separate opinions pointing out
 
 Brantley
 
 's well-meaning but unworkable approach, we
 abandon the test crafted in
 
 Brantley
 
 and return to the two-part, public-policy function test to determine when a claim against a governmental entity enjoys discretionary-function immunity. Applying that test here, the allegedly tortious act did not involve a discretionary policy decision.
 

 ¶ 37. We thus reverse the trial court's dismissal based on discretionary-function immunity and remand this case for further proceedings consistent with this opinion.
 

 ¶ 38.
 
 REVERSED AND REMANDED.
 

 WALLER, C.J., RANDOLPH, P.J., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.
 

 COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, P.J. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.
 

 Brantley v. City of Horn Lake
 
 ,
 
 152 So.3d 1106
 
 (Miss. 2014).
 

 Jones v. Miss. Dep't of Transp.
 
 ,
 
 744 So.2d 256
 
 (Miss. 1999).
 

 When reviewing a motion to dismiss, we take the facts alleged in the complaint as true.
 
 Scaggs v. GPCH-GP, Inc.
 
 ,
 
 931 So.2d 1274
 
 , 1275 (Miss. 2006).
 

 See
 

 Miss. Code Ann. § 11-46-11
 
 (Rev. 2012).
 

 According to Lincoln County's motion to dismiss, the County and City were acting jointly to replace the bridge with a culvert. At the time of the accident, the bridge had been removed and the culvert installed, but the road going over the culvert had not yet been finished.
 

 Wilcher was referring to the Manual on Uniform Traffic Control Devices (MUTCD), adopted by the State and referenced in Section 63-3-305.
 

 Through the MTCA, our Legislature waived "the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]"
 
 Miss. Code Ann. § 11-46-5
 
 (Rev. 2012).
 

 According to
 
 Gaubert
 
 , discretionary-function immunity "covers only acts that are discretionary in nature, acts that 'involve' an element of judgment or choice[.]"
 
 Gaubert
 
 ,
 
 499 U.S. at 322
 
 ,
 
 111 S.Ct. at 1273
 
 (quoting
 
 Berkovitz v. United States
 
 ,
 
 486 U.S. 531
 
 , 536,
 
 108 S.Ct. 1954
 
 , 1958,
 
 100 L.Ed.2d 531
 
 (1988) ). "Furthermore, even 'assuming the challenged conduct involves an element of judgment,' " that judgment must be "of the kind that the discretionary function exception was designed to shield"-i.e., it must involve "considerations of public policy."
 
 Id.
 
 at 322-23,
 
 111 S.Ct. at 1273-74
 
 .
 

 See also
 

 Miss. Transp. Comm'n v. Adams
 
 ,
 
 197 So.3d 406
 
 , 416-18 (Miss. 2016) (Maxwell, J., concurring in result only).
 

 See
 

 Boroujerdi v. City of Starkville
 
 ,
 
 158 So.3d 1106
 
 , 1114 (Miss. 2015) (remanding plaintiff's claim so that he could have the opportunity to "prove that the City's alleged inaction in repairing the sewage system was related to a more narrow function made ministerial by statute, ordinance, regulation, or other binding directive").
 

 This "Court will not find a private cause of action when there is no apparent legislative intent to establish one," and "the party asserting a right of action ... [bears] the burden of establishing the required legislative intent."
 
 Hill v. City of Horn Lake
 
 ,
 
 160 So.3d 671
 
 , 681 (Miss. 2015).
 

 It is interesting that Justice Kitchens cites
 
 stare decisis
 
 to justify upholding
 
 Brantley
 
 . There was no concern for
 
 stare decisis
 
 when the
 
 Brantley
 
 majority admittedly abandoned fifteen years of precedent.
 
 Boroujerdi
 
 ,
 
 158 So.3d at 1115-16
 
 (Waller, C.J., dissenting).
 

 On appeal, the defendants emphasize Wilcher has not brought a common-law failure-to-warn claim, only a statutory one. But if there are any deficiencies in Wilcher's complaint, this Court must shoulder the blame. And just as in
 
 Boroujerdi
 
 , "we find that it would be patently unfair to affirm [dismissal] in the [County's and] City's favor without [Wilcher's] having an opportunity to attempt to conform his complaint and proof to this Court's current approach to discretionary function immunity."
 
 Boroujerdi
 
 ,
 
 158 So.3d at 1114
 
 .
 

 Of course, the violation of relevant statutes, ordinance, or regulations may be relevant to the question whether a governmental employee acted negligently.
 
 Taylor
 
 ,
 
 186 So.3d at 391
 
 .
 

 Indeed, it is a jurisdictional requirement for bringing an action under the FTCA that the alleged tortious conduct was committed while acting within the scope of employment.
 
 E.g.,
 

 CNA v. United States
 
 ,
 
 535 F.3d 132
 
 , 140 (3d Cir. 2008) ;
 
 Lawrence v. Dunbar
 
 ,
 
 919 F.2d 1525
 
 , 1528 (11th Cir. 1990).
 

 See also
 

 28 U.S.C. § 1346
 
 (b) (authorizing federal lawsuits based on "claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government
 
 while acting within the scope of his office or employment
 
 " (emphasis added) );
 
 28 U.S.C. § 2672
 
 (authorizing the settlement of "any claim for money damages against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the agency
 
 while acting within the scope of his office or employment
 
 " (emphasis added) );
 
 28 U.S.C. § 2679
 
 (b)(1) ("The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government
 
 while acting within the scope of his office or employment
 
 is exclusive ...." (emphasis added) ).
 

 See
 

 Univ. of Miss. Med. Ctr. v. Oliver
 
 ,
 
 235 So.3d 75
 
 , 82-83 (Miss. 2017) (holding the MTCA did not apply to claim against police officers alleging they acted maliciously and thus outside the course and scope of their employment);
 
 Leleux v. United States
 
 ,
 
 178 F.3d 750
 
 , 757 (5th Cir. 1999) (dismissing a claim based on tortious conduct committed outside the scope of employment as "barred by the FTCA").
 

 If the language the Legislature chose is practically verbatim, does it not stand to reason that our Legislature intended to enact the same immunity provision
 
 to provide the same type of immunity
 
 ? Why would our Legislature enact a similarly worded immunity provision if the intent was
 
 not
 
 to provide "discretionary-function immunity" as understood by Congress, the body which came up with the concept in the first place?
 

 Nor it this a case about "road maintenance" in the broad sense. Like the decision to place traffic-control devices, the decision how best to use limited funds to maintain roadways very well could involve immunized policy decisions. But Wilcher is not claiming the County and City's decision to replace or not replace the bridge is what led to his injuries.
 

 Of course, the lack of immunity under one of Section 11-46-9(1)'s provisions does not preclude immunity under another provision.
 
 See
 

 Fair v. Town of Friars Point
 
 ,
 
 930 So.2d 467
 
 , 471 (Miss. Ct. App. 2006) ("If any subpart of Mississippi Code Annotated § 11-46-9(1) applies, immunity exists."). But it is telling that the City and County can find no relief under Mississippi Code Section 11-46-9(1)(v) -the immunity provision specifically aimed at premises-liability claims. According to Wilcher's allegations, which we must take as true at this stage, the City and County negligently created a dangerous condition that was not obvious and that the City and County failed to adequately warn against. So subsection (v), which provides immunity for claims "[a]rising out of an injury caused by a [non-obvious] dangerous condition on property of the governmental entity" that was neither caused by a governmental employee's negligence or known about in time to adequately protect against or warn, does not apply.
 
 Miss. Code Ann. § 11-46-9
 
 (1)(v) (Rev. 2012).