# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-01544-SCT

*RHONDA J. SMITH*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/28/2018 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | THOMAS L. TULLOS |
| | MARK D. MORRISON |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. TULLOS |
| ATTORNEY FOR APPELLEE: | MARK D. MORRISON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 03/19/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Rhonda Smith appeals the Smith County Circuit Court's grant of summary judgment to the Mississippi Transportation Commission (MTC). The MTC argued that Smith's claims were preempted by the MTC's discretionary-function immunity under Mississippi Code Section 11–46–9(1)(d) (Rev. 2015). As the Court of Appeals noted recently, "the precedent governing that question has evolved even during the pendency of this case . . . ." ***Bailey v. City of Pearl***, 282 So. 3d 669, 671(Miss. Ct. App. 2019). In ***Bailey***, our Court of Appeals correctly applied the public-policy function test articulated in the recent decision ***Wilcher v.***

*Lincoln County Board of Supervisors*, 243 So. 3d 177 (Miss. 2018). Similar to *Bailey*, in the case sub judice, not all of Smith's theories of recovery are disposed of by summary judgment. As in *Wilcher* and *Bailey*, issues of material fact remain regarding the MTC's liability, vel non. The Smith County Circuit Court's grant of summary judgment is affirmed to the extent Smith's claims are grounded in the MTC's decision-making processes, but it is reversed concerning Smith's claims unrelated to the MTC's decision-making processes.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the morning of April 12, 2010, Smith collided with a loaded logging truck. The truck was driven by Shelby Colson on Highway 28 in Smith County. Colson testified that he began slowing his vehicle because Joe Blackwell, an MTC employee, approached the truck from the side of the highway. He said Blackwell approached from under a tree canopy carrying a stop sign.

¶3.     Colson further said he had not seen any warning signs indicating that road work was occurring ahead or that he needed to slow his vehicle down before spotting Blackwell. Colson said Blackwell made no effort to wave the sign or to get his attention. He stopped because he was unsure what Blackwell was doing. The MTC disputes multiple aspects of Colson's testimony regarding Blackwell's location and actions. The MTC's version has Blackwell standing within inches of the fog line and actively directing traffic.

¶4.     Regardless of what prompted Colson to stop, Smith's car rear ended Colson's truck. Smith has no recollection of most of the events that occurred that morning. In June 2011, she

brought suit against the MTC. The suit alleged that both Blackwell and the MTC were negligent in Blackwell's posting, the sign placement, as well as Blackwell's signaling.

¶5. During the pendency of this case, this Court utilized differing tests to determine discretionary-function immunity in Mississippi. In 2014, a special judge denied the MTC's motion for summary judgment based on discretionary-function immunity, citing *Little v. Mississippi Department of Transportation*, 129 So. 3d 132 (Miss. 2013). Following discovery, the MTC renewed its motion for summary judgment. The parties prepared briefs addressing *Little*, then were directed to supplement their briefs after *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1112 (Miss. 2014), *overruled by* *Wilcher*, 243 So. 3d 177, was handed down. For reasons unrelated to today's controversy, the special judge's appointment was vacated in 2017. After Judge Stanley Sorey began presiding in November 2017, the parties addressed *Wilcher* in additional briefs. Smith now appeals the ruling granting the MTC's motion for summary judgment.

## STANDARD OF REVIEW

¶6. This Court reviews both challenges of grants of summary judgment and defenses of discretionary-function immunity de novo. *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 794 (Miss. 2012) (citing *Patterson v. Tibbs*, 60 So. 3d 742, 753 (Miss. 2011)), *overruled by* *Brantley*, 152 So. 3d 1106. A motion for summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c).

3

**ISSUES ON APPEAL**

¶7.     The issues on appeal follow:

I.      Are decisions by the MTC regarding placement of traffic-control devices discretionary?

II.     Does Smith's allegation that Blackwell was negligent for failing to do his job implicate discretionary-function immunity?

**ANALYSIS**

**I.      Are decisions by the MTC regarding placement of traffic-control devices discretionary?**

¶8.     To determine if actions are covered by discretionary-function immunity, we apply the public-policy function test resurrected in *Wilcher*. *Wilcher*, 243 So. 3d at 187 (citing *Montgomery*, 80 So. 3d at 795). It has two prongs: first, whether the alleged wrongful act involves an element of choice or judgment and, if so, then, second, whether the choice or judgment had a bearing on public policy. *Id.* Decisions that bear on public policy are decisions made by individuals charged with responsibility for making those decisions that consider economic, political, or social grounds. *Wilcher*, 243 So. 3d at 182 (citing *United States v. Gaubert*, 499 U.S. 315, 335, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991)). The purpose of this test is to discern between actual policy decisions of government made by policymakers versus simple acts of negligence by government employees or agents. *Wilcher*, 243 So. 3d at 188 (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 76 (Miss. 2012) (Waller, C.J., dissenting)).

¶9.     The duty to place and maintain traffic-control devices, as the MTC characterizes the

4

wrongful action here, has long been covered by discretionary-function immunity, as this Court acknowledged in *Wilcher*. *Wilcher*, 243 So. 3d at 187–88. Smith's argument to the contrary is unavailing. The MTC's duty to place and maintain traffic-control devices is set forth in Mississippi Code Section 63–3–303. That statute provides that traffic-control devices shall be placed and maintained as deemed necessary by the relevant entities. Miss. Code Ann. § 63–3–303 (Miss. 2013). As we stated in *Wilcher*, and even earlier in *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256 (Miss. 1999), the statute's assignment of authority clearly meets the first prong of the test because it is phrased as a choice or decision. We further reiterate that "installing warning lights or signs at dangerous intersections" and other instances of installation of traffic-control devices do carry with them economic, political, or social concerns. *Wilcher*, 243 So. 3d at 187. Therefore, any claims Smith brings that the MTC through its policymakers erred in its decision regarding placement of traffic-control devices are ineffective because the MTC can invoke discretionary-function immunity. Summary judgment on those issues, therefore, is affirmed.

## II. Does Smith's allegation that Blackwell was negligent for failing to do his job implicate discretionary-function immunity?

¶10. But Smith does not only allege the MTC incorrectly determined placement of traffic-control devices. Separately, Smith argues that Blackwell was negligent for failing to signal the traveling public at all. Smith argues that Blackwell breached a duty to act as a reasonably prudent person would in the situation and that this breach was the proximate cause of her injuries. Here, she does not challenge the MTC's discretion to place traffic-control devices

5

in certain areas or not. Rather, she challenges the conduct of Blackwell, the flagman, and argues that the MTC is vicariously liable for his negligence. Just as in *Wilcher* and *Jones*, we hold that such a claim clearly falls outside the ambit of placement of traffic-control devices contemplated in Section 63–3–303. Therefore, we engage in a separate analysis to determine if this action is subject to discretionary-function immunity.

¶11.    Blackwell's alleged failure to perform his assigned duty to warn the traveling public was a decision or choice, just as state employees can choose to run over manhole covers with lawnmowers, *Crum v. City of Corinth*, 183 So. 3d 847, 853–54 (Miss. 2016) (Randolph, P.J., concurring in result only), choose to place just two strips of non-stick tape on a step, *Pratt*, 97 So. 3d at 76 (Waller, C.J., dissenting), or choose not to put up a sign warning of a large hole in the middle of a road, *Wilcher*, 243 So. 3d at 188. Just like those actions, it is alleged that Blackwell elected to stand in the shade next to a pickup truck and not to perform the job he was placed in the field to do. If that is true, the defendants are not entitled to immunity protection. This conduct, if true, was not made by a policymaker considering social, economic, or political concerns. This allegation, if proved, does not fall within the ambit of discretionary-function immunity.

¶12.    But even if Smith successfully navigates around discretionary-function immunity, that alone is not enough to insure recovery. The MTC avers that by following too closely behind the logging truck, Smith was herself the sole cause of her damages. The proximate cause of Smith's injuries is a disputed question of material fact, as Smith asserts that it is the MTC's

derivative negligence that is to blame. Both parties have produced substantial evidence to support claims of the other's negligence, but it is the exclusive province of the finder of fact, not this Court, to discern the proximate cause of an accident and assess relative fault. ***Spann v. Shuqualak Lumber Co.***, 990 So. 2d 186, 190 (Miss. 2008). Given that there are multiple disputes of material fact relating to this case, we reverse the decision of the Smith County Circuit Court and remand this case for further proceedings.

## CONCLUSION

¶13.   The MTC is entitled to immunity protection for its decisions regarding placement of traffic-control devices. Smith's allegation of Blackwell's failure to perform his job, however, does not fall under the umbrella of public-policy protection provided in discretionary-function immunity. Therefore we affirm in part and reverse and remand in part the grant of summary judgment in favor of the MTC.

¶14.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**KITCHENS AND KING, P.JJ., MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.  COLEMAN, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., MAXWELL, CHAMBERLIN AND GRIFFIS, JJ.**

**COLEMAN, JUSTICE, CONCURRING:**

¶15.   Over the years, we have lost the original meaning of the two-part public function test. As a result, we have issued a wide-ranging net of opinions that fail to offer judges and lawyers practicing in Mississippi a reliable and understandable explanation of the meaning of the phrase discretionary function.   An examination of the historical context of

7

Mississippi's Tort Claims Act yields a definition of discretionary function that would, if wholly re-adopted by the Court, give clarity and solid explanations for the missteps of the past, *e.g., **Pratt v. Gulfport-Biloxi Regional Airport Authority***, 97 So. 3d 68 (Miss. 2012) *abrogated by **Wilcher v. Lincoln Cty. Bd. of Supervisors***, 243 So. 3d 177, 188 (Miss. 2018), and provide jurists, lawyers, and parties with surer footing going forward.

¶16.    I write separately today to offer an argument for continuing what we restarted in ***Wilcher v. Lincoln County Board of Supervisors***, 243 So. 3d 177 (Miss. 2018), and remembering the original meaning of the phrase.  In addition, after examining the instant case in light of the original meaning of the statute, I concur with the majority's holding.

**I.      Discretionary-function immunity applies to decisions made by policymakers that affect policy.**

¶17.    The Mississippi Tort Claims Act was first enacted in 1984 in response to the Mississippi Supreme Court's 1982 opinion in ***Pruett v. City of Rosedale***, in which the Court abolished "the judicially created concept of sovereign immunity."  ***Pruett v. City of Rosedale***, 421 So. 2d 1046 (Miss. 1982), *superseded by statute as stated in **Jackson v. Daley***, 739 So. 2d 1031, 1040 (¶ 32) (Miss. 1999).  We know the statute was enacted in response to ***Pruett*** because Mississippi Code Section 11-46-3(2) (Rev. 2019) establishes that the immunity of the State and its subdivisions "is and always has been the law in this state, before and after November 10, 1982 . . . ."  ***Pruett*** was handed down on November 10, 1982.  In any event, the Tort Claims Act begins with a declaration that the State and its political subdivisions "are not now, have never been and shall not be liable, and are, always have been and shall

8

continue to be immune from suit at law or in equity. . . ."  Miss. Code Ann. § 11-46-3(1) (Rev. 2019).  In other words, the Legislature abrogated *Pruett* and established that sovereign immunity was and is in place.  *Miss. Dep't of Mental Health v. Shaw*, 45 So. 3d 656, 658 (¶ 8) (Miss. 2010).

¶18.    After declaring the continued viability of sovereign immunity, the Legislature in Section 11-46-5 waived it, up to certain monetary limits delineated in Section 11-46-15, for "money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment . . . ."  Miss. Code Ann. § 11-46-5(1) (Rev. 2019); *accord. Shaw*, 45 So. 3d at 658 (¶ 8).  Then, after waiving it for money damages arising from the defined spectrum of tort, the Legislature then provided immunity from liability, within the waiver, for various, specific claims.  Miss. Code Ann. § 11-46-9 (Rev. 2019).

¶19.    Among the above-mentioned specific claims for which the Legislature reestablished immunity was the bedeviling discretionary function at issue today.  In the nascent years of Mississippi's Tort Claims Act, the Court interpreted the Section 11-9-46(1)(d) phrase "discretionary function or duty" to protect "those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness."  *Robinson v. Indianola Mun. Separate Sch. Dist.*, 467 So. 2d 911, 915 (Miss. 1985) (quoting *Pruett*, 421 So. 2d at 1052).  Indeed, the *Robinson* Court noted that the "principle of immunity from suit

9

for governmental bodies vested with discretionary authority *was carried forward*" by the Legislature when it adopted the Mississippi Tort Claims Act. ***Robinson***, 467 So. 2d at 915 (emphasis added). In other words, discretionary-function immunity preexisted the Tort Claims Act. Even short-lived ***Pruett*** retained it. There, the Court wrote as follows:

> The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those governmental decisions in which, to be effective, the decisionmaker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.

***Pruett***, 421 So. 2d at 1052. In short, the Tort Claims Act and ***Pruett*** both carried forward the already-existing discretionary-function immunity. To determine what the Tort Claims Act means when it uses the phrase, one must discern what the phrase meant in the law at the time the Act was adopted in 1984.

¶20. Prior to ***Pruett*** and the Tort Claims Act, the State and its subdivisions were immune from liability pursuant to the common law doctrine of sovereign immunity. ***Davis v. Little***, 362 So. 2d 642, 643 (Miss. 1978). Individuals who carried out the work of the sovereign, however, did not enjoy complete protection. ***Id.*** at 644. Rather, public officials enjoyed only limited immunity intended not for their benefit but for the protection of the sovereign, effected "by protecting the public official in performance of his governmental function." ***Id.*** The foregoing delineates the meaning of discretionary function as it would have been understood in the context of 1984 when the Legislature carried it forward in the Tort Claims Act. "The principle of immunity from suit for governmental bodies vested with discretionary

10

authority was carried forward in the legislative response to ***Pruett v. City of Rosedale*** . . . ,"

the Mississippi Tort Claims Act. ***Robinson v. Indianola Mun. Separate Sch. Dist.***, 467 So.

2d 911, 915 (Miss. 1985).

¶21.　In short, for any given decision to fall under the discretionary-function immunity

umbrella at the time the Tort Claims Act was enacted in 1984, it must not only be one that

"consider[s] economic, political, or social grounds," ***Wilcher***, 243 So. 3d at 182, but

also—pertaining to the second prong of the public-function test—be one made by a

policymaker that affects or sets public policy. ***Id.*** at 188. In its preservation of discretionary-

function immunity, the ***Pruett*** Court wrote that it applied to "all legislative, judicial and

executive bodies and those public officers who are vested with discretionary authority, which

principle of immunity rests upon an entirely different basis." ***Pruett***, 421 So. 2d at 1052. In

the early to mid 1980s, discretionary-function immunity was not only understood to apply

to a certain class of decisions, *i.e.*, those having a bearing on public policy, but also to a

certain class of decision-makers, *i.e.*, policy-makers. Two years after the passage of the Tort

Claims Act, the Court explained origins of discretionary-function immunity as follows:

> In order to allow our lawmakers and government officials to participate freely
> and without fear of retroactive liability in risk-taking situations requiring the
> exercise of sound judgment, the discretionary-ministerial distinction has
> evolved, and remains an integral part of our judicial system in the
> determination of liability of the state and its employees.

***State ex rel. Brazeale v. Lewis***, 498 So. 2d 321 (Miss. 1986), *overruled on other grounds by*

***Little v. Miss. Dep't of Transp.***, 129 So. 3d 132 (Miss. 2013). The ***Brazeale*** Court wrote of

*Pruett* that "our mandate specifically limited the liability of governmental officials to ministerial functions alone, allowing these state employees to continue their basic *policymaking* decisions without fear of legal retribution." *Brazeale*, 498 So. 2d at 323 (emphasis added). The policy-making nature of the decision, and the authority of the decision-maker to set policy, is further illustrated in the following:

> In determining the necessity of repairs, or the necessity for a reconstruction of the bridge in question, the board, or the member thereof authorized so to do, exercised a judicial or quasi judicial discretion and judgment, but in tearing down and rebuilding the bridge he was acting in the capacity of a road commissioner engaged in the performance of a ministerial duty.

*State ex rel. Russell v. McRae*, 169 Miss. 169, 152 So. 826, 828 (Miss. 1934).

¶22. Pursuant to the above reasoning, the Court in *Brazeale* held that individual members of a county board of supervisors enjoyed discretionary-function immunity because they participated in deciding which roads in the county would be maintained first. *Brazeale*, 498 So. 2d at 323. The members of the board of supervisors were policymakers whose decision regarding road maintenance priority set policy regarding which maintenance in the county would be performed. By contrast, in the now-debunked *Pratt v. Gulfport-Biloxi Regional Airport Authority*, 97 So. 3d 68 (Miss. 2012), the decision at issue—the manner in which anti-slip tape was affixed to stairs—was made by two airport employees with no policy-setting authority and, therefore, had no policy-setting ramifications. In *Pratt*, the Court held that the decision of the employees regarding the placement of the anti-slip tape bore upon public policy because the decision fell within the larger group of "daily operational decisions

that fall under the overall operation of the airport" that "*involve*[s] social and economic policy considerations . . . ." ***Pratt***, 97 So. 3d at 75 (¶ 18) (emphasis added).  However, the ***Pratt*** holding fails to comport with the requirement, understood at the time of the passage of the Tort Claims Act, that the decision in question not just grow out of or be tangentially related to policy but change or affect policy.  Returning to the original 1984 understanding of public function, necessarily entailing that the decision does not enjoy immunity unless made by a policy-maker in furtherance of setting policy, will clarify what is meant today by discretionary-function immunity and aid courts in their efforts to provide parties and attorneys with predictable, consistent results.

**II.    In the case *sub judice*, Smith alleges simple negligence on the part of the Mississippi Transportation Commission employees rather than attempting an attack on policy-setting decisions.**

¶23.    In *Wilcher*, we relocated the importance of considering whether a decision giving rise to litigation was policy-setting in nature.

> [W]e hold that Wilcher's claim that County and City employees negligently left an unfinished culvert installation overnight, without warning drivers they had removed but not yet replaced a bridge, is not barred by discretionary-function immunity. Wilcher is not trying to second-guess a policy decision through tort. He is seeking to recover for injuries caused by run-of-the-mill negligence.

*Wilcher*, 243 So. 3d at 180 (¶ 3).  Later, the Court wrote as follows:

> This is not a case, for example, where the plaintiff alleges the County or City decided against installing warning lights or signs at dangerous intersections, and that particular decision contributed to his accident with another vehicle. In such a scenario, it would be arguable that the plaintiff was trying to use his tort action to second-guess the government's discretionary policy decision on

13

how best to regulate traffic within the confines of the government's limited resources—something the discretionary-function provision was designed to curb.

*Wilcher*, 243 So. 3d at 187-88 (¶ 31) (citing *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

¶24.	In today's case, Smith's complaint alleges negligence on the part of the Commission and the flagman, Blackwell. The allegations include, *inter alia*, that Blackwell was not properly trained, did not have the ability to communicate effectively, failed to control signaling devices effectively, failed to stand in an effective location, failed to make himself visible to approaching traffic, and failed to properly use the stop sign he carried. The complaint never alleges that the Commission failed to properly place warning devices, only that Blackwell did.

¶25.	If we have lost sight of anything on the discretionary-function-immunity landscape since *Pruett* and the enactment of the Mississippi Tort Claims Act, we have lost sight of the limited scope of discretionary-function immunity's reach. As set forth above, it protects policy-makers making policy-affecting decisions. The decisions of Blackwell or other employees regarding the use, non-use, and placement of warning devices at the scene of the underlying collision have no policy-making value and were not made by people who set policy for the Commission.

	**RANDOLPH, C.J., MAXWELL, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION.**

14