# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-01300-SCT

*SHERRY WILLIAMS*

*v.*

*CITY OF BATESVILLE, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2019 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| TRIAL COURT ATTORNEYS: | JOHN THOMAS LAMAR, JR. |
| | JOHN THOMAS LAMAR, III |
| | ROY JEFFERSON ALLEN |
| | TAYLOR ALLISON HECK |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR, III |
| | TAYLOR ALLISON HECK |
| ATTORNEY FOR APPELLEE: | ROY JEFFERSON ALLEN |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 03/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. Sherry Williams sued the City of Batesville for negligence in maintaining its sewer system after her home and property were flooded by raw sewage. The circuit court granted the City's summary-judgment motion, finding the City immune from suit.

## FACTS AND PROCEDURAL HISTORY

¶2. In the spring of 2015, sewage began backing up into Williams's home and property

in the City of Batesville. Williams contacted City officials, who made numerous visits to her home during the twelve months that flooding on Williams's property persisted. After a year of the City's making numerous cost-conscious attempts to alleviate the problem, the City authorized and paid for the installation of a $10,000 separate lift-station pump solely to ensure that sewage did not continue affecting Williams's home.

¶3. On July 12, 2016, Williams filed suit in the Circuit Court of the Second Judicial District of Panola County to recover for extensive property damage, health concerns, and emotional distress. She asserted a claim for negligence, specifically negligent or deliberate failure to properly operate, maintain, supervise, and/or design the sewer system. On September 4, 2018, Williams amended her complaint to include a constitutional inverse-condemnation claim.

¶4. The City filed its summary-judgment motion on November 30, 2018, arguing that it is protected by the Mississippi Tort Claims Act, specifically Mississippi Code Section 11-46-9(1)(d), the discretionary-conduct exception, and Mississippi Code Section 11-46-9(1)(g), the discretionary-purchases exception.[1] Additionally, the City argued the inverse-condemnation claim was unwarranted because the property was not taken and, even if it had

---

[1]The record indicates that the City submitted a memorandum of law to the circuit court in support of its motion for summary judgment, but the record does not contain it. The record, however, does contain a reply brief filed by the City to Williams's summary-judgment response that provides argument and case law, which the City contends further supports its motion for summary judgment.

been taken, it was not used by the public or for public benefit.

¶5.     Williams responded that the City's maintenance of its sewer system is not discretionary and that her property was damaged for the public benefit because the City continued to allow her property to be flooded with raw sewage to save money. Williams attached an affidavit of an engineering consultant, which supported her claim that the City's negligent failure to properly maintain its sewage system caused the extensive and repeated damage to her home.

¶6.     The circuit court ruled in favor of the City, finding the City immune from liability under the Mississippi Tort Claims Act.[2]  The court also found that a taking had not occurred. Williams appeals.

## LAW AND ANALYSIS

### I.      Standard of Review

¶7.     "[O]n appeal, we review de novo the trial court's dismissal based on MTCA immunity." *Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177, 181 (Miss. 2018) (citing *Fortenberry v. City of Jackson*, 71 So. 3d 1196, 1199 (Miss. 2011), *overruled on other grounds as recognized in* *City of Magee v. Jones*, 161 So. 3d 1047 (Miss. 2015)). "Additionally, when reviewing a grant of summary judgment, this Court employs a *de novo*

---

[2] When this suit was filed and discovery was conducted, *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), was controlling law.  Shortly before the City filed its motion, this Court handed down *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177 (Miss. 2018).

3

standard of review." ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1109 (Miss. 2015) (citing ***Anglado v. Leaf River Forest Prods.***, 716 So. 2d 543, 547 (Miss. 1998)), *overruled on other grounds by **Wilcher***, 243 So. 3d 177.

¶8.     "We must consider all of the evidence 'in the light most favorable to the non-moving party.'" ***Id.*** (quoting ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So. 2d 790, 794 (Miss. 1995)).  "However, the nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial,' and cannot simply 'rest upon the mere allegations or denials of his pleadings.'" ***Id.*** (quoting M.R.C.P. 56(e)).

### II.     Whether the circuit court erred by holding that the City was immune under the MTCA.

¶9.     The Mississippi Tort Claims Act generally provides sovereign immunity to the state. Miss. Code Ann. § 11-46-3 (Rev. 2019).  But the Legislature waived sovereign immunity for "claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment[.]" Miss. Code Ann. § 11-46-5(1) (Rev. 2019).  The Legislature then established some exceptions to that limited waiver of immunity. Miss. Code Ann. § 11-46-9 (Rev. 2019).

¶10.    At the summary-judgment hearing, the City argued, and the court agreed, that two of those exceptions apply here.  The exceptions, codified in Sections 11-46-9(1)(d) and (g), provide:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>      . . . .

4

> (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
>
> . . . .
>
> (g) Arising out of the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;

Miss. Code Ann. § 11-46-9(1)(d), (g) (Rev. 2019).

¶11. Williams argues that these exceptions do not apply because the City was not performing a discretionary function.

¶12. This Court has recently returned to using the public-policy function test articulated in *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256 (Miss. 1999), after finding the test adopted in *Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014), unworkable. *Wilcher*, 243 So. 3d at 181.

¶13. The public-policy function test has two parts. *Id.* at 187. "This Court first must ascertain whether the activity in question involved an element of choice or judgment." *Id.* (internal quotations marks omitted) (quoting *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012)). "If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations." *Id.* (quoting *Montgomery*, 80 So. 3d at 795). "Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity." *Id.*

¶14. Before employing the test, the Court must "correctly identif[y] 'the activity in

5

question'—the allegedly tortious act giving rise to the claim." *Id.* Here, the circuit court found that "the specific activity in this case is the decision to install a lift station in a timely manner, or to fix the issue with Williams's house."

¶15. Williams contends that, as in *Wilcher*, the circuit court here was mistaken about the tortious activity. In *Wilcher*, a construction crew removed a bridge to install a culvert and left a giant hole overnight. *Id.* at 187. The county insisted that the placement of the traffic-control devices was the problem. *Id.* The Court found that the "tortious act was the construction crew's alleged failure to barricade or warn against the significant drop-off in the road—a condition it created." *Id.* at 188.

¶16. Williams contends that she does not challenge the City's specific decision about the remedy of installing a lift pump. She concedes that the lift pump ultimately solved the problem. Rather, she challenges the complete initial failure and subsequent failures of the City to properly maintain its sewage lines, which was the sole cause of her damage.

## A. Element of Choice or Judgment

¶17. Citing *Fortenberry*, the City argues that it was performing a discretionary function because maintaining a sewage system involves an element of judgment as provided by Mississippi Code Section 21-27-189(b) (Rev. 2015). *Fortenberry*, 71 So. 3d at 1201.

¶18. In *Fortenberry*, the plaintiffs' home was flooded with sewage repeatedly after heavy rains. *Id.* at 1198. An investigation revealed that a blocked sewer line was causing the backup. *Id.* This Court held that under the first prong of the public-policy function test, the

6

city's decision to operate and maintain its sewage system involved an element of judgment as provided by Mississippi Code 21-27-189(b). *Id.* at 1201.[3]

> A municipality, as defined in Section 21-27-163, is authorized and empowered, in the *discretion of its governmental authorities*, to exercise the following powers and authority within the area and territories comprising the metropolitan area of which it is a part:
> . . . .
>
> (b) to construct, *operate and maintain sewage systems*, sewage treatment facilities and sewage disposal systems in the manner and to the extent required by the metropolitan area plan.

*Id.* at 1200 (quoting Miss. Code Ann. § 21-27-189(b) (Rev. 2007)).

¶19. We agree that Section 21-27-189 is clear that municipalities have the discretion to create and maintain a sewer system. Miss. Code Ann. § 21-27-189 (Rev. 2015). We now discuss whether the alleged activity here involved social, economic, or political policy considerations.

### B. Whether the choice or judgment involved social, economic, or political policy considerations.

¶20. If the court finds that the activity was discretionary, the second step of the public-policy function test requires the court to "decide whether that choice or judgment involved social, economic, or political-policy considerations." *Wilcher*, 243 So. 3d at 187 (citing *Montgomery*, 80 So. 3d at 795.

¶21. The City argues that it should not be forced to spend the most money right out of the

---

[3] *Fortenberry* was decided before *Wilcher*, but it has not been overruled on this point.

7

gate. Further, its decision to use a sliding-scale approach to fix the backup at Williams's house was a discretionary function subject to immunity because it involves financial decisions.

¶22. The circuit court agreed that the City's analysis of how to best, most expediently, most efficiently, and most cost-effectively repair the sewer lines falls under the discretionary-function exception. Therefore, the court found that the approach to the solution involved an element of choice based on financial decisions, which would implicate social, economic, or political policy.

¶23. But the approach to the solution using the sliding scale is not Williams's allegation. She complains that the backup happened in the first place and that the City mishandled it. The question is whether sewer maintenance or failure, which we have identified as a discretionary function, involves real, policy-based decisions that would provide the City immunity or whether the City was simply negligent.

¶24. Williams contends that the City's decision not to maintain its sewage lines or to clear the backup does not involve social, economic, or political policy. In *Moses v. Rankin County*, several homeowners sued Rankin County for failing to properly maintain Mill Creek, which was adjacent to their neighborhood and flooded their homes. *Moses v. Rankin Cnty.*, 285 So. 3d 620, 621 (Miss. 2019). The circuit court granted the county's motion to dismiss, and this Court reversed. *Id.* at 622. "Taking all of the allegations of the plaintiffs' complaint as true, Rankin County's alleged failure to maintain Mill Creek is a case of simple

8

negligence contemplated in *Wilcher*. Such maintenance decisions do not involve policy considerations." *Moses*, 285 So. 3d at 625-26.

¶25. As the Court of Appeals noted in *Bailey*, while maintaining a sewer is a discretionary function, "basic maintenance decisions do not involve policy considerations . . . ." *Bailey v. City of Pearl*, 282 So. 3d 669, 675 (Miss. Ct. App. 2019). In *Bailey*, "a woman died after an unsecured gate speared her car." *Id.*

¶26. *Bailey* essentially held that, "even though the city may have had the discretionary authority to build a park, it could not claim total immunity simply because the first prong was met." *Reverie Boutique LLC, v. City of Waynesboro*, 282 So. 3d 1273, 1279 (Miss. Ct. App. 2019) (citing *Bailey*, 282 So. 3d at 676). "[T]he activity in question is not the city's policy decision to create a park, which was covered by the first prong of the test, but rather the activity was an alleged failure to secure or maintain a gate in that park." *Bailey*, 282 So. 3d at 676.

¶27. Furthermore, "although it is true that a plaintiff must allege specific acts of negligence not related to or flowing from a social, economic, or political policy, merely saying that maintenance costs money does not make the failure to provide it an 'economic policy' decision." *Id.* at 677-78. Therefore, the Court of Appeals reversed the trial court's judgment and remanded the case for further proceedings. *Id.* at 678.

¶28. *Moses* and *Bailey* concerned a motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, while the instant case concerns a summary judgment

motion. *Moses*, 285 So. 3d at 621; *Bailey*, 282 So. 3d at 670. Here, deposition testimony was presented by Byron Houston, a civil engineer who worked for the City during the relevant time period. Houston testified that he had advised City personnel in the spring of 2015 that the City should install a lift station for Williams's benefit so that she would not have any additional problems while it continued to investigate. In a sworn affidavit, Williams's expert, Dennis Truax, reported that the measures taken by the City before eventually installing a lift station were wrong and did not work because they did not properly advise Williams as to her sewage usage. Truax said that a "pressure sewer" approach is widely used in Mississippi in such situations and that this measure is similar to what Houston had recommended to the City but that the City initially rejected it. Truax said that the City failed to remove the blockage that occurred downstream from Williams's home, which resulted in additional discharge situations. Rather than remove the blockage, the City chose an ineffective "stopgap" approach.

¶29. The City did not present any countervailing evidence of its own. It simply claimed that it explored every feasible alternative it could before finally spending the money necessary to install a lift station for one house.

¶30. Based on our de novo review of the record, we find that a genuine issue remains as to whether the City exercised ordinary care in doing so. We reverse and remand for Williams to have the opportunity to present her negligence case against the City to the trier of fact.

¶31. Lastly, Justice Griffis would reverse the trial court's grant of summary judgment in

favor of the City because the City's "motion for summary judgment was not properly presented to the circuit court or to this Court." CIPR Op. ¶ 57. According to Justice Griffis, because the City did not include a memorandum brief in support of its motion for summary judgment as required by Uniform Civil Rule of Circuit and Count Court Practice 4.02, the record is without documentary or evidentiary support as to whether the City is entitled to a judgment as a matter of law.

¶32. First, we do not know that the City actually failed to include a Rule 4.02 memorandum brief with its motion for summary judgment. The City refers to its "accompanying memorandum brief" in its motion for summary judgment filed on November 30, 2018. Counsel for Williams repeatedly references the City's Rule 4.02 memorandum in "PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF BATESVILLE'S MOTION FOR SUMMARY JUDGMENT AND COMBINED MEMORANDUM OF LAW," filed on January 29, 2018.[4]

¶33. Further, both parties reference the City's Rule 4.02 memorandum throughout the summary-judgment hearing. The trial court repeatedly references the City's Rule 4.02 memorandum in its final order granting summary judgment in favor of the City. And in the motion to reopen the time for appeal, counsel for Williams expressly stated that the City

---

[4] For example, William's response was as follows: "The City's final argument is that it is entitled to summary judgment on Williams' inverse condemnation claim because her property was not damaged for public use. See City's Motion at p. 12. The City is again incorrect."

11

"filed its motion for summary judgment and supporting memorandum" on November 30, 2018.

¶34.    So, unlike Justice Griffis, we refuse to conclude that the City's "motion for summary judgment was not properly presented to the circuit court or to this Court" for failure to include a Rule 4.02 memorandum in support of its motion. CIPR Op. ¶ 57 . We do not know that to be the case, and the record before us strongly indicates that it was not the case.

¶35.    The Rule 4.02 memorandum may or may not have been properly filed with the circuit clerk as required by the rule, or it may have just been inadvertently excluded from the record on appeal.  Whatever the reason, we find it of no moment in this instance.

¶36.    Rule 4.02 is for the benefit of the trial judge. *Jackson v. Miss. Life Ins. Co.*, 755 So. 2d 15, 22 (Miss. Ct. App. 1999) (its purpose is for the trial court "that is swamped with an overwhelming number of civil and criminal dispositive motions" (internal quotation mark omitted) (quoting *Dominguez v. Eli Lilly & Co.*, 958 F.Supp. 721, 727 (D.P.R. 1997))). Rule 4.02 is meant to help trial judges from having to "ferret[] through the record" and from "being unfairly sandbagged by unadvertised factual issues." *Id.* (internal quotation marks omitted) (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 920-31 (1st Cir. 1983)).

¶37.    As recognized in *Jackson*, the  provision of Rule 4.02 "requiring itemization of undisputed facts is not in Rule 56 governing summary judgment[.]" *Id.*  But "many courts around the country have adopted such a provision in local rules" similar to Rule 4.02. *Id.*

12

The trial court "can impose an appropriate sanction for failure to comply with the obligation to itemize the uncontested facts or to respond to the other side's itemization." *Id.* This may include "denial of the motion," or "tak[ing] the facts in the moving party's itemization as admitted." *Id.* at 22-23.

¶38.   No such action was taken in this case because none was requested or needed.  Again, the record illustrates that the City provided a Rule 4.02 memorandum in support of its motion for summary judgment both to the trial court and to Williams.

¶39.   Moreover, the essential facts of this case are not disputed.  Both parties agree that sewage began backing up onto Williams's property and into her home in and around March or April 2015.  Williams reported the problem to the City.  The City sent personnel to Williams's property and the surrounding area over a twelve-month period in an effort to remedy the situation.  The City's efforts were unsuccessful until the City eventually installed a lift station to service Williams's home.  Williams had previously requested that a lift station be installed, which the City had denied due to cost.

¶40.   To say that we have simply gathered facts from the City's lawyer's argument is nonsense.  These are the facts as alleged in Williams's pleadings.  These are the facts as presented to the trial court at the summary-judgment hearing.[5]  These are the facts as related

_____

[5] Justice Griffis contends that the City also failed to comply with Mississippi Rule of Civil Procedure 7(b)(1), which requires motions to the trial court for an order to state with particularity in writing the grounds for the motion and the relief sought.  What Justice Griffis fails to mention is the exception to the rule's requirement that an application to the court for an order be in writing "unless made during a hearing or trial."  M.R.C.P. 7(b)(1).  A

13

by the trial court in its order granting summary judgment in favor of the City, having reviewed the motion, along with the City's Rule 4.02 memorandum, the responses and reply briefs, and oral arguments at the summary judgment hearing. And these are the facts that the City's maintains are undisputed in its brief on appeal.

### III. Whether the circuit court erred by finding that a taking had not occurred.

¶41. This Court has held that "[i]nverse condemnation is available 'where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings.'" *State ex rel. Hosemann v. Murphy*, 202 So. 3d 1243, 1251 (Miss. 2016) (emphasis omitted) (quoting *Jackson Mun. Airport Auth. v. Wright*, 232 So. 2d 709, 713 (Miss. 1970)).

¶42. Here, the circuit court found that a taking had not occurred, stating, "[t]he Court does admit that the damage to Williams's house is not common to the public as no other house was damaged apparently, but the claim was as a result of an inaction of Batesville, not an action, like building a road."

¶43. Williams contends that a taking had occurred because the City wrongfully chose to damage her property for the public benefit of saving public money for nearly a year before it finally installed a lift pump to stop sewage from entering her home and property. She

---

summary-judgment hearing took place in this case in which the City argued with particularity its grounds for requesting an order from the trial court granting summary judgment in its favor.

argues that such action constitutes a taking and entitles her to a claim of inverse condemnation.

¶44. Williams relies on ***Thompson v. City of Philadelphia***, in which this Court held that "[t]he city is liable for any special and different damage suffered by appellants, not common to the general public, caused by the construction and maintenance of its sewerage system whether properly constructed and maintained or not." ***Thompson v. City of Philadelphia***, 180 Miss. 190, 177 So. 39, 40 (Miss. 1937).

¶45. In ***Thompson***, plaintiffs sued the City of Philadelphia "to recover special damages alleged to have been suffered by them because of the 'improper sewer disposal . . . [by the city], on and over considerable acreage owned by the appellants[.]'" ***Id.*** at 39. The trial court had instructed the jury that it could not find for damages unless the wrongs complained of were caused by the negligent construction and maintenance of the city's sewage system. Finding reversible error with the instruction, this Court reiterated that "liability under section 17 of the Constitution is not dependent on negligence but on the taking or damaging." ***Id.*** at 40.

¶46. The City agrees that Williams suffered damage "not common to the general public," but the City maintains that its decision to use a sliding-scale approach to allocate resources does not constitute a taking and that, even if it does, it certainly was not a taking for public benefit or use.

¶47. The City points out that ***Thompson*** is more than eighty years old and is limited by decisions that make it clear that "[n]ot every tort committed by [a] governmental entity that

15

results in property damages gives rise to an action in inverse condemnation." ***Kelley v. Corinth Pub. Utils. Comm'n***, 200 So. 3d 1107, 1118 (Miss. Ct. App. 2016) (internal quotation mark omitted) (quoting ***Air Quality Prods., Inc. v. State***, 157 Cal. Rptr. 791, 797 n.7 (1979)). Rather, the City argues, "[i]nverse condemnation is appropriate only when private property is taken or damaged in respect to public use or use for the public benefit." ***Id.*** (internal quotation mark omitted) (quoting ***Air Quality Prods.***, 157 Cal. Rptr. at 797 n.7).

¶48. ***Kelley*** only addresses takings for public use or benefit as a broad principle, and the property damage in ***Kelley*** is distinguishable from Williams's damage. Kelley's damage occurred after he asked the water department to install pipes on his private property. ***Id.*** at 1110-11. Here, Williams never requested any activity that led to her property's being damaged.

¶49. In ***City of Tupelo v. O'Callaghan***, the plaintiff filed suit against the city of Tupelo when the city's eroding drainage ditch caused foundation issues on the plaintiff's property and damaged the plaintiff's home. ***City of Tupelo v. O'Callaghan***, 208 So. 3d 556, 559 (Miss. 2017). The city moved to dismiss plaintiff's claim as time barred by Mississippi Code Section 15-1-49 (Rev. 2019). ***Id.*** at 561. Plaintiffs responded that this Court's holding in ***City of Vicksburg v. Herman*** that article 3, section 17 takings or damages should be "without limitation or qualification" excluded taking claims from any limitation periods. ***Id.*** (quoting ***City of Vicksburg v. Herman***, 72 Miss. 211, 16 So. 434, 434-35 (Miss. 1894)).

¶50. ***O'Callaghan*** reiterated that the Mississippi Constitution's inclusion of the words "*or damages*" in 1890 was intended to expand the taking provision of article 3, section 17, to

16

"encompass 'all damages to his property that may result from works for public use.'" *O'Callaghan*, 208 So. 3d at 563 (quoting *Herman*, 16 So. 434-35).

¶51.    Additionally, this Court explained that the *Herman* Court's interpretation that these claims should be "without limitation or qualification" was intended "to broaden the types of harm embodied by the state's Takings Clause." *Id.* at 563. We maintained that "[d]amage inflicted upon the property is not restricted: it is 'without limitation or qualification,' permitting due compensation for any damage incurred, no matter the type or extent." *Id.*

¶52.    Again, "liability under section 17 of the Constitution is not dependent on negligence but on the taking or damaging." *Thompson*, 177 So. at 40.  But this does not mean that a claim under this constitutional provision may not be predicated on negligent conduct. *See Hodges v. Town of Drew*, 172 Miss. 668, 159 So. 298 (1935) (holding that trial court erred by granting directed verdict for defendant over plaintiff's constitutional taking-or-damaging claim when evidence showed that city permitted sewage tank to fall into disrepair that caused sewage to overflow and contaminate plaintiff's land).

¶53.    In *Hodges*, this Court noted *City of Vicksburg v. Porterfield*, 164 Miss. 581, 145 So. 355 (1933), in which this Court upheld a judgment for damages against the city for "permitt[ing] a drain sewer to become obstructed, impounding the rainfall, and damaging plaintiff's property." *Hodges*, 159 So. at 301 (citing *Porterfield*, 145 So. 355).  Similarly, Williams's inverse condemnation claim is predicated on alleged negligent conduct by the City for the public benefit.  As related above, Williams has presented evidence raising fact questions as to whether the City's alleged conduct resulted in a taking or damaging her

17

property for the public benefit.

¶54. Consistent with ***Hodges***, we find that the trial court erred by granting judgment in favor of the City as to Williams's constitutional claim for damages to her property.

**CONCLUSION**

¶55. Because Williams may be able to prove a set of facts under the MTCA for actions by the City that are not exempt from immunity, we hold that the circuit court erred by dismissing the claims of basic negligence, and we remand the case for further proceedings. We further hold that the trial court erred by granting judgment in favor of the City as to the Williams's inverse-condemnation claim.

¶56. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., MAXWELL AND ISHEE, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, C.J., COLEMAN AND MAXWELL, JJ. CHAMBERLIN, J., NOT PARTICIPATING.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶57. I, too, would reverse the grant of summary judgment and would remand this case for further proceedings. My reasons, however, are different. Here, the City of Batesville's motion for summary judgment was not properly presented to the circuit court or to this Court. The majority says that I disagree because "the City did not include a memorandum brief . . . as required by . . . [Rule] 4.02." Maj. Op. ¶ 31. This is not correct. I disagree with the majority because summary judgment motions must be presented in conformity with the

18

Mississippi Rules of Court, and this requires the movant to present evidentiary support as to the genuine issues of material fact that are to be relied on to determine whether the movant is entitled to a judgment as a matter of law. *See* M.C.R.P. 56(c). The City failed to do so in its motion.

¶58. This case is governed by the Mississippi Rules of Court. These rules establish the proper procedure to present a motion for summary judgment to a circuit court and, because the appropriate standard of review for such cases on appeal is de novo, this Court. These rules are important, and it is equally important that these rules are followed and enforced by this Court. If this Court fails to follow its own rules, neither trial courts nor lawyers should be required to follow the rules.

### 1. Summary Judgment

¶59. This appeal considers whether the circuit court erred when it granted summary judgment in favor of the City.

¶60. Rule 56 of the Mississippi Rules of Civil Procedure governs summary judgments.[6] Rule 56(b) provides that a defending party, such as the City "may, at any time, move with or

---

[6] The majority's finding begins with the statement—"[b]ecause Williams may be able to prove a set of facts under the [Mississippi Tort Claims Act] for actions by the City that are not exempt from immunity. . . ." Maj. Op. ¶ 55. This is not the correct legal standard for the Court to consider a summary judgment. Whether Williams "may be able to *prove a set of facts*" to support her claim under the Mississippi Tort Claims Act is the standard to review a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6). Maj. Op. ¶ 55 (emphasis added); *see* **Children's Med. Grp., P.A. v. Phillips**, 940 So. 2d 931, 933 (Miss. 2006) ("to reverse the trial court's denial of [the defendant]'s Rule 12(b)(6) motion to dismiss, we must be able to say, with certainty, that [the plaintiff] *cannot prove any set of facts to support his claim*" (emphasis added)); *see also* **Moses v. Rankin Cnty.**, 285 So. 3d 620, 621 (Miss. 2019) (Court considered grant of the county's motion to dismiss).

without supporting affidavits for a summary judgment in his favor as to all or any part" of a claim asserted against it. Rule 56(c) provides that a provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The rule also provides for a partial summary judgment. M.R.C.P. 56(d). Rule 56(e) provides:

> **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

M.R.C.P. 56(e).

### 2. *Summary-Judgment Procedure*

¶61. In ***Karpinsky v. American National Insurance Co.***, this Court established the following as the appropriate summary-judgment procedure:

> Summary judgment is appropriate and "shall be rendered" if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Importantly, the party opposing summary judgment "may not rest

20

upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him."

This Court has explained that "in a summary judgment hearing, '[t]he burden of producing evidence in support of, or in opposition to, [the] motion . . . is a function of [Mississippi] rules regarding the burden of proof at trial on the issues in question.'" "The movant bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." "The movant bears the burden of *production* if, at trial, he 'would [bear] the burden of proof on th[e] issue' raised." In other words, "the movant only bears the burden of production where they would bear the burden of proof at trial." Furthermore, "summary judgment 'is appropriate when the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."'"

***Karpinsky v. Am. Nat'l Ins. Co.***, 109 So. 3d 84, 88-89 (¶¶ 10-11) (Miss. 2013) (footnotes omitted) (citations omitted).

¶62.  A motion for summary judgment presents only two considerations for a court.  First, the court must decide if there any "genuine issue as to any material fact."  M.R.C.P. 56(c).  Said differently, is there any genuine issue of a material fact in dispute?  If there is a genuine issue as to any fact or any disputed fact, the motion should be denied. *Id.*

¶63.  Second, if the court finds there is no genuine issue as to any material fact, the court should then determine whether, based on these undisputed facts, the movant should be granted a "judgment as a matter of law." *Id.*  Under no circumstance may the court resolve a disputed issue of fact or grant summary judgment in favor of a nonmovant.[7]

---

[7] The majority finds that the nonmovant here is entitled to a judgment as a matter of law.  Maj. Op. ¶ 55.  This is a judgment as a matter of law in favor of Williams, the

### 3.    *Standard of Review*

¶64.    Appellate review begins with the standard of review.  Here, the majority is correct that the grant of summary judgment is reviewed de novo on appeal.   ***Boroujerdi v. City of Starkville***, 158 So. 3d 1106, 1109 (¶ 7) (Miss. 2015), *overruled on other grounds by **Wilcher v. Lincoln Cnty. Bd. of Supervisors***, 243 So. 3d 177 (Miss. 2018).

¶65.    De novo review "means that the case shall be tried the same as if it had not been tried before, and the court conducting such a trial may substitute its own findings and judgment for those of the inferior tribunal from which the appeal is taken." ***Cal. Co. v. State Oil & Gas Bd.***, 200 Miss. 824, 838-39, 27 So. 2d 542, 544 (1946) (citing ***Knox v. L.N. Dantzler Lumber Co.***, 148 Miss. 834, 854-55, 114 So. 873, 876 (1927)).  Thus, this Court's review of the motion for summary judgment is just as if this Court were sitting as the circuit judge. No deference is given to the circuit court's decision.  This Court must look at the same pleadings and evidentiary material that the trial court considered.

### 4.    *Analysis of City's Motion for Summary Judgment*

¶66.    Here, de novo review requires that we start with City's motion for summary judgment. In its entirety, the City's motion states:

> COMES NOW Defendant City of Batesville, by and through counsel, and herein files this motion for summary judgment.

> Defendant City of Batesville, Mississippi, moves for summary judgment as to

---

nonmovant, and is improper.  Under Rule 56(c), the Court may either grant the movant a summary judgment as a matter of law or deny the motion.  The Court may not make a disputed factual finding or enter a judgment as a matter of law for the nonmovant.

all claims and would show unto the Court that summary judgment is appropriate as a matter of law. *For the reasons as argued further in the accompanying memorandum brief*, Plaintiffs lawsuit should be dismissed with prejudice.

(Emphasis added.)

### A.      No supporting documents or evidence support the majority's factual findings.

¶67.    The "accompanying memorandum brief" referred to in the motion is not in the record before this Court.[8]

¶68.    It is fundamental to this Court's de novo review of the motion for summary judgment that the City's motion must present evidence to establish that there was no genuine issue of a material fact in dispute; said differently, the City had to offer evidence of the undisputed facts the motion relied upon.  Instead, the majority concedes that the "City did not present any countervailing evidence." Maj. Op. ¶ 29. Rule 56(c) obligated the City to present evidence, and it did not.

¶69.    The entire majority opinion is based on facts and an analysis of such facts that are not based on any documentary or evidentiary support contemplated by Rule 56.  Here, there are no documents, evidence, sworn testimony, or any other reliable or credible evidence to

_____

[8]  The majority acknowledges "that the City submitted a memorandum of law to the circuit court in support of its motion for summary judgment, but the record does not contain it." Maj. Op. ¶ 4 n.1. The majority does not explain or consider the significance of this omission; instead, the majority simply dismisses it.

The City's reply includes argument of counsel, but it does not include an itemization of the facts that are relied on and not in dispute, and it does not include any documentary or evidentiary support about the genuine issues of material fact that are to be relied on to determine whether the City is entitled to a judgment as a matter of law.

23

support the facts relied on by the City.  The majority simply gathers its facts from the City's

lawyer's argument. Yet the majority characterizes this as "nonsense." Maj. Op. ¶ 40.  In

response, I ask the majority to include in its opinion a record citation that supports each

factual statement.⁹  It is improper for this Court, or any court, to consider a motion for

summary judgment simply based on matters not in the record or solely based on the argument

of counsel.

### B.     The Mississippi Rules of Court were not followed.

¶70.    Mississippi court rules establish the procedure to present a motion for summary

judgment in circuit court.¹⁰  This procedure was not followed here.

### i.     Mississippi Rule of Civil Procedure 56

¶71.    While Rule 56(b) allows summary-judgment motions to be considered "with or

without supporting affidavits," Rule 56(c) and (d) clearly require the movant to offer credible

documents and evidence to support the facts presented.  Rule 56(c) provides that "[t]he

judgment sought shall be rendered . . . if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any, *show that there is*

*no genuine issue as to any material fact* and that the moving party is entitled to a judgment

---

⁹ The majority's reference to the deposition testimony of Byron Houston and the affidavit of Dennis Truax were offered by Williams in opposition to the motion for summary judgment, and they do not support the City's motion.

¹⁰ Rule 4.02 of the Uniform Civil Rules of Circuit and County Court Practice establishes the procedure to present a summary-judgment motion to a circuit court.  The Uniform Chancery Court Rules do not include a similar rule.

24

as a matter of law." M.R.C.P. 56(c) (emphasis added).

¶72. Here, no credible documents or evidence support the City's factual statements. Without the City's absent memorandum, this Court has no way to discern whether any pleadings, depositions, answers to interrogatories, admissions, or affidavits establish the City's claim that it is entitled to a judgment as a matter of law.

### ii. *Mississippi Rule of Civil Procedure 7(b)(1)*

¶73. Rule 7(b)(1) of the Mississippi Rules of Civil Procedure requires that "[a]n application to the court for an order shall be by motion which . . . shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." The City's motion did not comply with Rule 7(b)(1).

¶74. The City did not file the "accompanying memorandum brief" with the circuit clerk,[11] and it is not before this Court. Despite this fact, the majority collects facts to support its conclusion from other sources. I am not sure where the majority gets these facts, but they are not consistent with how such facts and motions are to be presented under the Mississippi Rules of Court.

### iii. *Uniform Civil Rule of Circuit and County Court Practice 4.02*

¶75. Rule 4.02 of the Uniform Civil Rules of Circuit and County Court Practice establishes

---

[11] Interestingly, if this case were in a court that allowed filing under Mississippi Electronic Courts, the memorandum brief would have been required to be filed electronically. Section 3A(8) of the Mississippi Electronic Courts Administrative Procedures provides that "[m]emoranda in support shall be electronically filed separately and shown as a related document to the motion." This case was not in an MEC court, and the missing memorandum was not electronically filed.

the proper way for the circuit court and this Court to consider the facts and legal arguments of a summary-judgment motion. The parties here did not follow Rule 4.02. Rule 4.02 states that "[t]he provisions of this rule *shall* apply to all written motions" and provides:

1.  The original of each motion, *and all affidavits and other supporting evidentiary documents shall be filed with the clerk* in the county where the action is docketed. . . . Responses and supporting evidentiary documents shall be filed in the same manner.

2.  In circuit court a memorandum of authorities in support of any motion to dismiss or for summary judgment *shall be mailed to the judge* presiding over the action at the time that the motion is filed. Respondent shall reply within ten (10) days after service of movant's memorandum. A rebuttal memorandum may be submitted within five (5) days of service of the reply memorandum. *Movants for summary judgment shall file with the clerk as a part of the motion an itemization of the facts relied upon and not genuinely disputed and the respondent shall indicate either agreement or specific reasons for disagreement* that such facts are undisputed and material. . . . Copies of motions . . . for summary judgment sent to the judge shall also be accompanied by copies of the complaint and, if filed, the answer.

3.  Accompanying memoranda or briefs in support of other motions are encouraged but not required. Where movant has served a memorandum or brief, respondent may serve a reply within ten (10) days after service of movant's memorandum or brief. A rebuttal memorandum or brief may be served within five (5) days of service of the reply memorandum.

4.  No memorandum or brief required or permitted by this rule shall be filed with the clerk.

UCRCCC 4.02 (emphasis added).

¶76. The City's motion for summary judgment was deficient under three rules of our courts. First, it was deficient under Mississippi Rule of Civil Procedure 7(b)(1) because it is "[a]n application to the court for an order," but it does not "state with particularity the

26

grounds therefor." Second, the City's motion is deficient under Uniform Civil Rules of Circuit and County Court Practice 4.02(1) and (2) because it does not include any "affidavits and other supporting evidentiary documents" or an "itemization of the facts relied upon and not genuinely disputed." Finally, the City's motion is deficient under Mississippi Rule of Civil Procedure 56(c) because it does not include any "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," to support the City's claim that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

¶77. The majority brushes aside these rules. And I am deeply concerned with the majority's argument that Uniform Civil Rule of Circuit and County Court "Rule 4.02 is for the benefit of the trial judge." Maj. Op. ¶ 36 (citing *Jackson v. Miss. Life Ins. Co.*, 755 So. 2d 15, 22 (Miss. Ct. App. 1999)). Indeed, it is. But this Court considers this appeal de novo, so Rule 4.02 is for the benefit of this Court to review the motion for summary judgment.

¶78. This Court's willingness to scour the briefs and memoranda in the record to discern what was required to be provided under Mississippi Rule of Civil Procedure 7(b)(1), Uniform Civil Rules of Circuit and County Court Practice 4.02(1) and (2), and Mississippi Rule of Civil Procedure 56(c) essentially tears these rules out of the rule book and encourages attorneys and trial courts not to comply with our rules of court. This is a mistake.

¶79. I find that the City failed to present its motion for summary judgment as required by Mississippi Rule of Civil Procedure 56, Mississippi Rule of Civil Procedure 7(b)(1), Uniform Civil Rule of Circuit and County Court Practice 4.02, and Mississippi Rule of Civil

27

Procedure 56(c). The facts cited by the majority were not properly before the circuit court and are not properly before this Court. I find nothing in the record that would support summary judgment in favor of the City. I would reverse the grant of summary judgment and remand this case for further proceedings.

### 5. *Other Issues with the Majority Opinion*

¶80. In addition, I point out several other fundamental issues I have with the majority's opinion.

¶81. In several paragraphs, the majority refers to what "the circuit court found." While the finding by the circuit court may aid the majority's analysis, because our review is de novo, the circuit court findings are of no relevance or legal effect.

¶82. The majority states, "[h]ere, the circuit court found that a taking had not occurred, stating, '[t]he Court does admit that the damage to Williams's house is not common to the public as no other house was damaged apparently, but the claim was as a result of an inaction of Batesville, not an action, like building a road.'" Maj. Op. ¶ 42. Again, the circuit court's finding is not relevant in our de novo review, and the circuit court's admission is of no value to this Court's analysis. This appears to be a factual finding in favor of Williams, the nonmovant, which is inappropriate under Mississippi Rule of Civil Procedure 56(c).

¶83. I concur in the result reached by the majority. I agree that this appeal should be reversed and remanded. I concur in part because I agree that the majority has accurately stated Mississippi law as it relates to the Mississippi Tort Claims Act.

**RANDOLPH, C.J., COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION IN PART.**

28