# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01876-SCT

*BRENDA L. MITCHELL AND BRADFORD DREHER
JORDAN*

*v.*

*CITY OF GREENVILLE, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/03/2001 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | WALTER BEAUREGARD SWAIN, JR. |
| ATTORNEY FOR APPELLEE: | L. BRADLEY DILLARD |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/29/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This appeal results from a circuit judge's grant of summary judgment in favor of a governmental

entity pursuant to the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev.

2002).  Finding no error, we affirm the judgment of the Circuit Court of Washington County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On November 12, 1999, Brenda L. Mitchell (Mitchell) and Bradford Dreher Jordan (Jordan) filed

separate lawsuits against the City of Greenville, Mississippi (Greenville) and Hovas Construction, Inc.

(Hovas) for injuries and damages sustained in a one-car accident on November 14, 1998, when Mitchell

and Jordan were occupants of a motor vehicle which struck a pile of dirt and debris from the construction

of a boat ramp on Lake Front Road. Greenville had previously contracted with Hovas for the construction of a boat ramp involving, among other things, the "cutting into" Lake Front Road.

¶3. Mitchell and Jordan operated a night club called The Walnut Street Bait Shop. Jordan played in a band performing in the club on the night of the accident. Around midnight the band took a break, and Jordan, Mitchell, and one of the other band members, Richard Taliaferro, drove to the home of Mitchell and Jordan on Lake Ferguson Road, north of Greenville. They went to their home to feed their cats and retrieve a cord needed by the band.

¶4. They left the night club between 12:15 and 12:30 a.m. At her deposition, Mitchell testified that Jordan was driving. It took around 15 minutes for them to drive home. On the way back to the club, there was a misting rain as they ascended and descended a levee. Upon descending the levee, they were heading toward Lake Front Road, a road with which they were very familiar, when according to Mitchell, dirt and debris appeared "suddenly out of nowhere." The vehicle struck the pile of dirt and debris, and the occupants were injured. Jordan testified via deposition that as he drove the van he could see a yellow tractor near the pile of debris; however, he did not see traffic cones or lights. Jordan stated he had consumed one five-ounce cup of wine while on stage with the band that night. Personnel with the Greenville Police Department performed a breathalyzer test on Jordan around 4:00 a.m., approximately three hours after the accident, and he registered .092.

¶5. In his complaint Jordan alleged that he was driving the vehicle. He also alleged the pile of dirt and debris was not reasonably visible nor did he have adequate warnings. Mitchell filed a separate complaint against Greenville and Hovas the same day. In her complaint, Mitchell alleged she was a passenger in the vehicle she owned but which was driven by Jordan. Her complaint also alleged the pile of dirt and debris was not reasonably visible nor were adequate warnings in place.

¶6. Prior to any responsive pleadings being served, both Mitchell and Jordan filed separate amended complaints. These amended complaints were identical to their respective complaints except that the amended complaints substituted Greenville City Clerk Mary Ann Hess for Greenville Mayor Paul Artman as the person upon whom process could be served in behalf of Greenville. Shortly thereafter, Greenville filed separate answers to the amended complaints and a motion to consolidate the cases. By agreed order, the cases were consolidated.

¶7. Greenville moved for summary judgment on the basis of exemption for liability under Miss. Code Ann. §§ 11-46-9(1)(v) & (w). Upon responses being filed, the trial court conducted a hearing on the summary judgment motion. Upon taking the motion under advisement, the trial court in due course granted summary judgment in favor of Greenville pursuant to the MTCA, from which both Mitchell and Jordan have appealed.

## STANDARD OF REVIEW

¶8. The Mississippi Legislature has determined that governmental entities and their employees shall be exempt from liability in certain situations as outlined in Miss. Code Ann. § 11-46-9. This exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation. *Cf. Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001). Therefore, immunity is a question of law and is a proper matter for summary judgment under Miss. R. Civ. P. 56.

¶9. This Court reviews de novo a trial court's summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 65 (Miss. 1988). All evidence is viewed in the light most favorable to the non-movant. *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So.2d 1346, 1354 (Miss. 1990). *See also Brown v. Credit Ctr., Inc.*, 444 So.2d 358, 362-65 (Miss. 1983) and its progeny.

3

## DISCUSSION

**I. WHETHER THE TRIAL COURT PROPERLY GRANTED GREENVILLE'S MOTION FOR SUMMARY JUDGMENT.**

¶10. The sole issue on appeal is whether the trial judge correctly granted summary judgment in favor of Greenville. En route to granting summary judgment, the trial judge held that Greenville was exempt from liability under the Mississippi Torts Claims Act, which states in pertinent part:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . .

(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care; [or]

(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.

Miss. Code Ann. § 11-46-9(1)(v) & (w). Mitchell and Jordan assert that Greenville, through its contractor, Hovas, created the dangerous condition and failed to warn drivers of the potential danger. Upon review of the record, there is no doubt that Greenville entered into a contract for the construction of a boat ramp and that the road was under construction at the time of the accident. However, the record indicates that precautions were taken to warn motorists of the dangerous road condition.

¶11. The affidavit of Steve Hovas, an officer of Hovas, reveals that the portion of Lake Front Road where the accident occurred had been "cut into" as part of the construction project on November 13, 1998. Hovas further stated that when he left the construction site at noon, twelve to thirteen hours prior

4

to the accident, warning signs had been placed on both the north and south portions of Lake Front Road, indicating "Road Closed to Thru Traffic." The placement of the signs on that date and time was corroborated by affidavit testimony of the project engineer, Bill Burle, Jr.

¶12. Further corroboration came from the affidavit of Kenneth Westbrook, a security guard for Greenville Gravel Company. At approximately 5:00 p.m. on November 13, 1998 (the afternoon prior to the early morning accident of November 14, 1998), Westbrook observed orange cones and a large warning sign in the middle of the roadway on the north side of the construction indicating that the road was closed. However, when Westbrook went to the scene shortly after the accident, at approximately 1:00 a.m. on November 14, 1998, he noticed that the sign previously upright at the north end was now "lying face up in approximately the middle of the roadway" with the orange cones scattered. In their rebuttal brief, Mitchell and Jordan concede that warning signs were posted at the site at the end of the work day. However, they argue that Greenville made "no subsequent inspection of the signs for a period of seven or eight hours before the accident."

¶13. Their argument is misplaced because § 11-46-9(1)(w) does not require a governmental entity to actively patrol areas containing warning signs to see if a third party has removed the signs. The statute exempts the governmental entity from liability for the removal of warning signs "*unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice*." *Id.* (emphasis added).

¶14. Mitchell and Jordan rely on pre-MTCA cases to place a duty on Greenville to patrol the streets to find downed warning signs. However, even prior to the enactment of the MTCA, this Court held that a municipality is not an insurer of the safety of motorists on its streets. *City of Jackson v. Locklar*, 431

5

So.2d 475, 479 (Miss. 1983).  There is nothing in the record to indicate that Greenville knew or should have known that the sign was tipped over.  While Westbrook's affidavit indicates that <u>he</u> had seen the sign "blown down by the wind" in the past, it does not indicate that he ever reported that fact to Greenville.

## CONCLUSION

¶15.    The circuit judge was eminently correct in granting summary judgment pursuant to the Mississippi Tort Claims Act and our cases interpreting the Act.  For these reasons, the trial court's grant of summary judgment and final dismissal in favor of Greenville is affirmed.

¶16.    **AFFIRMED**.

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY AND GRAVES, JJ., CONCUR.    McRAE, P.J., CONCURS IN RESULT ONLY.    DIAZ, J., NOT PARTICIPATING.**