# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-01669-SCT

*CHRISTOPHER SHANE STRICKLAND, SR., ON
BEHALF OF AND AS NEXT FRIEND OF
CHRISTOPHER SHANE STRICKLAND, JR.*

*v.*

*RANKIN COUNTY SCHOOL DISTRICT*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2019 |
| TRIAL JUDGE: | HON. JOHN H. EMFINGER |
| TRIAL COURT ATTORNEYS: | TIMOTHY D. MOORE |
| | JAMES MICHAEL PRIEST, JR. |
| | WALKER REECE GIBSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES MICHAEL PRIEST, JR. |
| | TIMOTHY D. MOORE |
| ATTORNEYS FOR APPELLEE: | WALKER REECE GIBSON |
| | FRED M HARRELL, JR. |
| | REBECCA SUZANNE BLUNDEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 06/30/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     As with many cases involving tort claims against government entities, that the government employee acted negligently is almost assumed, and the sole focus becomes whether the Legislature has conferred immunity on the activity in question. Such is the case here. Much legal analysis has been aimed at whether the actions of two cross-country

coaches were discretionary policy decisions entitled to immunity from suit under Mississippi Code Section 11-46-9(1)(d) (Rev. 2019). But on certiorari review, we find this question to be moot.

¶2. The reason for this is simple—the alleged actions of the coaches do not establish any triable claim for negligence. In other words, we find there is no alleged tort claim upon which to apply the Mississippi Tort Claims Act's discretionary-function-immunity provision. For this reason, we affirm the trial court's grant of summary judgment to the Rankin County School District.

## Background Facts & Procedural History

### I. Cross-County Race

¶3. In September 2016, Christopher Shane Strickland, Jr., a sophomore at Northwest Rankin High School, was at Choctaw Trails in Clinton, Mississippi, preparing to run a cross-country meet. Before the race, a wasp stung Christopher on the top of his head. According to Christopher, a lump began to form and his head felt tight, like it was swelling.

¶4. Christopher told one of his coaches. According to affidavits submitted by the Rankin County School District (RCSD), two coaches and a registered nurse, who was there to watch her son race, examined Christopher's head and found no evidence of a sting or adverse reaction. And Christopher assured them he was fine and wanted to run the race. But Christopher recalled only one coach examining him. And this coach told him to "man up" and run the race.

¶5. Christopher did run the race. According to one of his coaches, she checked in on him at the mile marker. He responded that he was "okay, just hot." According to Christopher, after the mile marker he began to feel dizzy. Then he fell, hitting his head.

¶6. The same nurse attended to him. So did her husband, who is a neurologist. Christopher appeared to recover and rejoined his team after the race. But he later went to a doctor, who discovered injuries to his brain and spine.

## II.    Lawsuit

¶7. In January 2017, Chistopher's father, Christopher Shane Strickland, Sr. (Strickland), sued RCSD on Christopher's behalf. He alleged various breaches of duties in how RCSD employees acted both (1) after the wasp sting but before the race and (2) after Christopher's fall. Specifically, Strickland alleged that, after the fall, RCSD employees failed to follow the district's concussion protocol.

¶8. RCSD is a governmental entity, so the actions of its employees acting within the course and scope of their employment fall under the Mississippi Tort Claims Act. Miss. Code Ann. § 11-46-7 (Rev. 2019). While the MTCA generally waives sovereign immunity, it exempts from this waiver certain actions within the course and scope of government employment. Miss. Code Ann. § 11-46-9(1) (Rev. 2019). So for the actions listed in Section 11-46-9(1), sovereign immunity is restored. RCSD relied on the specific immunity provision of Section 11-46-9(1)(d), known as discretionary-function immunity, to move for summary judgment. The trial court denied its motion.

¶9. But in the interim, this Court handed down the sovereign-immunity case *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177 (Miss. 2018), which restored the two-part, public-policy function test for determining if an allegedly tortious activity involved the exercise of an discretionary function and thus was entitled to sovereign immunity. Relying on *Wilcher*, RCSD amended its motion for summary judgment, asserting its coaches' decisions involved policy and thus were immune discretionary functions.

¶10. At the summary judgment hearing, Strickland's counsel abandoned any claim based on RCSD employees' actions *after* Christopher's fall, acknowledging Strickland lacked medical evidence to establish any causal connection between RCSD's allegedly deficient response to Christopher's fall and his injuries. So the focus was on RCSD's employees' allowing Christopher to run the race after being stung by a wasp. Citing *Wilcher*, Strickland's counsel insisted the coaches' actions amounted to ordinary negligence.

¶11. The trial court granted RCSD's motion. The trial court determined that RCSD's employees acted "acted within [their] discretion under Miss. Code Ann. § 11-46-9(1)(d) while conducting the school sporting event and [their] treatment of [Christopher] relative to his insect sting claim." But even if discretionary-function immunity did not apply, the trial court found summary judgment would still be proper because the coaches' "actions as to an alleged insect sting, any corresponding medical care, and any decision to allow [Christopher] to participate in the cross-country racing event exceeded the ordinary care standard." Specifically, the trial court found "no genuine issue of material fact exists for these claims or any other claim asserted by [Strickland] in this action."

### III. Appeal

¶12. Strickland appealed the trial court's grant of summary judgment. And by a five to five vote, the Court of Appeals affirmed. *Strickland ex rel. Strickland v. Rankin Cnty. Sch. Dist.*, No. 2019-01669-COA, 2021 WL 2327700 (Miss. Ct. App. June 8, 2021). At issue between the equally divided appellate court was the precedential value of pre-*Wilcher* cases that applied the two-part, public-policy function test to athletic coaching decisions.[1] *Compare Strickland*, 2021 WL 2327700, at **3-4, *with id.* at **4-5 (Barnes, C.J., writing separately).

¶13. Strickland petitioned this Court for a writ of certiorari, which we granted. Just as the trial court and Court of Appeals did, we review the grant of summary judgment to RCSD de novo. *Woodard v. Miller*, 326 So. 3d 439, 446 (Miss. 2021) (citing *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 228 (Miss. 2005)). Viewing the evidence in the light most favorable to Strickland, the nonmovant, *id.*, we must examine "if the pleadings,

---

[1] In *Wilcher*, this Court abandoned its prior *Brantley* test for determining discretionary function immunity because that test was not only unworkable but also led to the potential creation of tort duties based on government policies where no common law duty existed. *Wilcher*, 243 So. 3d at 183-85, *overruling Brantley v. City of Horn Lake*, 152 So. 3d 1106 (Miss. 2014). Instead, this Court readopted the two-part public-policy function test put forth by United States Supreme Court in *United States v. Gaubert*, 499 U.S. 315 (1991), and initially adopted by this Court in *Jones v. Mississippi Department of Transportation*, 744 So. 2d 256 (Miss. 1999). *Wilcher*, 243 So. 3d at 185-89. But we added an important disclaimer. In *Wilcher*, we acknowledged past applications of the public-policy function test had stretched the concept of policy too far. *Id.* at 188 (citing *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 75 (Miss. 2012)). And we admonished courts to distinguish between attempts to second-guess policy decision through tort claims, against which governmental entities are immune, and attempts "to recover for injuries caused by run-of-the-mill negligence," against which discretionary-function immunity does not apply. *Id.* at 180; *see also id.* at 188 (adopting the dissent's analysis in *Pratt*, 97 So. 3d at 76-77 (Waller, C.J., dissenting)).

5

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

**Discussion**

¶14. The Court of Appeals spent much time debating, based on the allegations before it, the proper way to apply the two-part public-policy function test reestablished in *Wilcher*, 243 So. 3d 177. But as we clarified in *Wilcher*, the trial court's application of the public-policy function test to determine if a governmental entity enjoys discretionary-function immunity comes *after* an important pre-test step—namely, identifying "the allegedly tortious act giving rise to the claim." *Id.* at 187. And, here, Strickland has failed to allege a tort claim—let alone produce any evidence in support of his claim, as was his burden when faced with RCSD's motion for summary judgment. *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88-89 (Miss. 2013).

¶15. Both the separate Court of Appeals' opinion authored by Judge Barnes and the separate opinions by this Court suggest we cannot consider Strickland's failure to produce evidence establishing a triable negligence claim against RCSD because RCSD moved for summary judgment based on discretionary-function immunity alone. *Strickland*, 2021 WL WL 2327700, at *6 (Barnes, C.J., writing separately). While MCTA immunity "is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation," *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (Miss. 2003), we first point out that RCSD's motion *did not* come at the first

6

possible stage of litigation. Instead, RCSD filed its motion more than two years after Strickland filed suit, after both parties had completed discovery and gathered supporting affidavits and medical experts. In fact, when faced with RCSD's amended motion for summary judgment, Strickland abandoned his claims based on RCSD's response to Christopher's fall. The precise reason he did so was because Strickland conceded he lacked *any* medical evidence to support a causal connection between RCSD's allegedly negligent response and Christopher's injuries. And Strickland defended his remaining claims against RCSD's amended motion for summary judgment by asserting his submitted affidavits "establish the existence of disputes of material facts so that summary judgment is not appropriate." So the question of whether there was a genuine issue of material fact to be presented at trial was on the table at the summary judgment stage. And this Court's recognizing the lack of a triable negligence claim is certainly not fundamentally unfair based on our de novo standard of review.

¶16. But even if we were to follow the separate opinions' reasoning, even the Court of Appeals judges who would have reversed specifically acknowledged that to apply the two-part, public-policy function test, a court must "look at the specific event or activity being challenged." *Strickland*, 2021 WL 2327700, at \*5 (Barnes, C.J., writing separately) (citing *Wilcher*, 243 So. 3d at 188). And here, the specific activity being challenged is the RCSD's coaches allowing and encouraging Christopher to run after being stung by a wasp. Strickland insists these actions constitute "run-of-the-mill negligence" claim. *Wilcher*, 243 So. 3d at 180. Negligence has four essential elements—duty, breach, causation, and damages. *E.g.,*

7

*Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). And to prove

negligence, one must show "a causal connection between the breach and the [injury], such

that the breach is the proximate cause of the [injury]." *Id.* (quoting *Double Quick v. Lymas*,

50 So. 3d 292, 298 (Miss. 2010)). But, here, at no point in his complaint or in his responses

to RCSD's original and amended motions for summary judgment has Strickland articulated

any breach of duty by RCSD employees that proximately caused Christopher's injuries.

¶17.    Viewing the evidence in the light most favorable to Strickland, as we must at the

summary judgment stage, we agree with the trial court "that the [school district]'s actions as

to an alleged insect sting, any corresponding medical care, and any decision to allow

[Christopher] to participate in the cross-country racing event exceeded the ordinary care

standard." At most, Strickland has established his son complained to RCSD coaches of a

wasp string. According to the medical forms Strickland had filled out, Christopher had no

known allergy to wasp stings. And RCSD coaches observed no signs of injury. One of the

coaches told Christopher to "man up." And *more than an hour later*, Christopher, who did

not at that point exhibit or complain of any labored breathing, swelling, or other signs of

distress, was permitted to run the race with his teammates. Thus, whatever happened to

Christopher during the race was not the result of any allegedly tortious activity on the part

of RCSD employees.

¶18.    Without any allegedly tortious activity, there is nothing to which to apply the two-part,

public-policy function test to determine if RCSD is immune from liability. Stated differently,

because Strickland alleged no tort, the question of discretionary-function immunity is *moot*.

8

That's why there is simply no reason to address RCSD's supposed legislatively conferred immunity for actions that do not otherwise give rise to a private cause of action.

¶19.	Therefore, based on our de novo review, we affirm the grant of summary judgment in RCSD's favor.

¶20.	**AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. ISHEE, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH, C.J. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J. BEAM, J., NOT PARTICIPATING.**

**ISHEE, JUSTICE, CONCURRING IN RESULT ONLY:**

¶21.	It appears unlikely that Strickland will be able to prove that the school district was negligent in allowing him to run the race, but—as the Court of Appeals dissent pointed out—whether Strickland could prove negligence was not at issue on summary judgment. It is fundamentally unfair for the majority to fault Strickland for having no evidence of negligence when he was never put on notice he had to come forward with that evidence prior to trial. Thus, while I agree that the majority reaches the right result in the end, I concur in result only.

¶22.	In seeking summary judgment, "[t]he movant carries the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party is given the benefit of the doubt as to the existence of a material fact issue." *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (Miss. 2006) (citing *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005)). "The party seeking summary judgment bears the burden of proving there is no genuine issue

9

of material fact." ***Barmada v. Pridjian***, 989 So. 2d 359, 362 (Miss. 2008) (citing ***Miller v. Meeks***, 762 So. 2d 302, 304 (Miss. 2000)). This is not a particularly high burden when "the nonmovant bears the burden of proof at trial"; under such circumstances the defending party "needs only to demonstrate an absence of evidence in the record to support an essential element of the movant's claim." ***Cothern v. Vickers Inc***., 759 So. 2d 1241, 1245 (Miss. 2000) (citing ***Crain v. Cleveland Lodge 1532, Order of Moose, Inc.***, 641 So. 2d 1186, 1188 (Miss. 1994)).

¶23. The Rankin County School District did exactly what it was supposed to do in its summary judgment motion: it identified the specific aspects of Strickland's case it believed he could not prove. The school district began by laying out Strickland's two theories of negligence, which generally are (1) that the school should not have encouraged or allowed him run in the race and (2) that the school negligently responded to Strickland's fall during the race. The summary judgment motion asserted that the school district was immune under the MTCA for both counts and that there was no evidence of actionable negligence supporting the second count—only the second count. Thus, Strickland was only on notice that he had to come forward with his evidence to prove actionable negligence in one of his two counts. Strickland ultimately admitted that he could not prove he had suffered additional injury as a result of the school's handling of his fall after it had occurred. But it is erroneous and unfair for the majority to find the evidence wanting as to the first count when Strickland's ability to prove it had never been questioned.

¶24. "A successful summary judgment motion results in a final adjudication of the merits of a case." *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 649 So. 2d 179, 184 (Miss. 1994). Thus, "it is an absolute necessity" that the nonmoving party be given notice and an opportunity to respond to a claim for summary judgment. *Id.* "The requirements of Rule 56(c), far from being a mere extension of our liberal procedure exalting substance over form, represents a procedural safeguard to prevent the unjust deprivation of a litigant's constitutional right to a jury trial." *Id.* (citing Miss. Const. art. 3, § 31). "[A] trial court may not grant summary judgment sua sponte on grounds not requested by the moving party without notice and an opportunity to respond." *Peavey Elecs. Corp. v. Baan U.S.A., Inc.*, 10 So. 3d 945, 956 (Miss. Ct. App. 2009) (internal quotation marks omitted) (quoting *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004)). This rule is widely followed by other courts. For example, American Jurisprudence, Second Edition, recites:

> As a general rule, a trial court may not grant summary judgment sua sponte on grounds not requested by the moving party; however, an exception to this general rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is considering granting summary judgment. Entry of summary judgment by the court sua sponte is inappropriate if it takes a party by surprise; however, the harmless error doctrine applies if a trial court fails to give notice and grants summary judgment sua sponte.

73 Am. Jur. 2d *Summary Judgment* § 16 (footnotes omitted). The majority is apparently satisfied that the error is harmless because discovery had been completed. *See* Maj. Op. ¶15. But the fact that discovery had been completed does not mean Strickland had notice to put all of his evidence into the record prior to trial. Otherwise, the majority just notes that Strickland asserted he had "establish[ed] the existence of disputes of material facts so that

11

summary judgment is not appropriate" in his response to the summary judgment. I cannot agree that this mere recitation of the summary judgment standard serves as a waiver of the notice requirement. *See* Maj. Op. ¶15.

¶25. The majority's decision to affirm the trial court's decision on grounds that were not before it sets a dangerous precedent: a party defending against a summary judgment motion will be forced to put all of her evidence into the record in every case, regardless of what grounds are asserted for summary judgment, lest the Court notice her "failure" to prove some unchallenged aspect of her case. This is not how summary judgment is supposed to work. If this Court doubts Strickland's ability to prove his negligence case, the correct remedy is to remand the case to the circuit court, where Strickland would have an opportunity to put on his proof.

¶26. All that being said, the record does support granting summary judgment on immunity grounds.

¶27. In order to determine if discretionary function immunity applies, two elements must be present: (1) "the activity in question involved an element of choice or judgment" and (2) "that choice or judgment involved social, economic, or political-policy considerations." ***Wilcher v. Lincoln Cnty. Bd. of Supervisors***, 243 So. 3d 177, 187 (Miss. 2018)) (quoting ***Miss. Transp. Comm'n v. Montgomery***, 80 So. 3d 789, 795 (Miss. 2012)). Before employing the test, the Court must "correctly identif[y] 'the activity in question'—the allegedly tortious act giving rise to the claim." ***Williams v. City of Batesville***, 313 So. 3d 479, 483 (Miss. 2021) (quoting ***Wilcher v. Lincoln Cnty. Bd. of Supervisors***, 243 So. 3d 177, 187 (Miss. 2018)).

12

¶28.    The alleged tortious act in question here was the coaches' decision to let Christopher run the race.  In considering the public-policy-function test, Strickland does not dispute that the coaches' decision that day "involved an element of choice or judgment."  Therefore, the crucial question is whether the coaches' decision involved social, economic, or political policy.  Strickland is claiming that the coaches' decision "had no policy effect" and therefore RCDS is not immune under the MTCA.  This is not the case because, as RCDS stated, this expands the question of the *involvement* of a policy consideration into an examination of that single step's *effect* on a policy.

¶29.    As addressed by the Court of Appeals, there were several cases post-***Jones***, but pre-***Brantley***[2] and pre-***Wilcher***, that addressed discretionary-function immunity in the context of decisions by public-school coaches and physical-education teachers. *See* ***Clein v. Rankin Cnty. Sch. Dist.***, 78 So. 3d 384, 386 (Miss. Ct. App. 2012) (holding that regulating the establishment and operation of athletic programs and other school activities constitutes an exercise of political policy); ***Covington Cnty. Sch. Dist. v. Magee***, 29 So. 3d 1, 8 (Miss. 2010) (holding that coaches' ability to set and conduct practice is rooted in policy); ***Harris ex rel. Harris v. McCray***, 867 So. 2d 188, 192 (Miss. 2003).

¶30.    In ***Harris***, this Court considered the applicability of discretionary-function immunity to a suit brought on behalf of a football player who suffered heatstroke at practice. ***Harris***, 867 So. 2d at 188-89.  In concluding that discretionary-function immunity was applicable, this Court emphasized that "[w]e must balance the serious negative repercussions which

---

[2]    ***Brantley v. City of Horn Lake***, 152 So. 3d 1106 (Miss. 2014).

13

could result for all extra-curricular school activities if the discretionary decisions of coaches are not exempt from liability pursuant to [Section] 11-46-9(1)(d) with the need for providing a well-rounded education." *Id.* at 192. Absent immunity, this Court stated that:

> [h]igh school football coaches around the state would lose their ability to control their football teams. Discipline of a football team would become nonexistent. . . . [I]f the coach, in fear of a successful lawsuit, should cow to the player's every whim, wish and demand, then the coach would lose the respect of the players, and discipline and morale would be lost.

*Id.* at 193

¶31. *Magee* involved whether discretionary-function immunity applied to a wrongful-death action filed against a school district following a student's death from heatstroke during football practice. *Magee*, 29 So. 3d at 1. This Court relied on *Harris* in concluding that "the discretionary acts at issue are grounded in public policy[,]" such that discretionary-function immunity was applicable. *Magee*, 29 So. 3d at 7-8. According to this Court, "[t]he District's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy—coaches know their players and must be able to control their teams." *Id.* at 8.

¶32. In *Clein*, the Court of Appeals considered whether a physical-education teacher's "choice of warmup activities" implicated discretionary-function immunity. *Clein*, 78 So. 3d at 388. In concluding that it did, the Court of Appeals relied upon *Magee* and determined that "regulating the establishment and operation of athletic programs and other school activities, such as physical-education classes, constitutes an exercise of political policy, thus satisfying the second prong of the discretionary-function analysis." *Clein*, 78 So. 3d at 389.

14

¶33. The Court of Appeals here said that "the cross-country athletic program constitutes political policy; thus, the [RCSD] was correctly granted the protection of discretionary immunity, and the decision of the circuit court is affirmed."[3] *Strickland ex rel. Strickland v. Rankin Cnty. Sch. Dist.*, No. 2019-CA-01669-COA, 2021 WL 2327700, at *2 (Miss. Ct. App. June 8, 2021). In so holding, it relied on *Clein*, *Magee*, and *Harris*, for the principle that "a school district's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy—coaches know their players and must be able to control their teams." *Strickland*, 2021 WL 2327700, at *3 (citing *Magee*, 29 So.3d at 1). According to the Court of Appeals, "[c]oaches must set guidelines and principles associated with training and disciplining their athletes, which may be complex because the athlete's climax will often test the human body and spirit. Inasmuch, the decisions and actions of coaches is anchored in social policy." *Id.* at *4. Later, the court provided that "the cross-country program constitutes social policy, satisfying the test and the grant of discretionary immunity that was extended to [RCSD] was also extended to the coaches who were acting within their discretion." *Id.* at *4. I agree with the Court of Appeals' line of reasoning.

¶34. In this case, the coaches were trained in first aid and were responsible for carrying out decision making regarding student participation in athletic events. The coaches implemented their training to decide whether or not Christopher would be able to run the race after examining him. Such considerations for potential injuries call on coaches to use their

---

[3] Later, the lead opinion in the Court of Appeals provided that "the cross-country program constitutes social policy, satisfying the test and the grant of discretionary immunity that was extended to [RCSD] was also extended to the coaches who were acting within their discretion." *Strickland*, 2021 WL 2327700, at *4.

15

discretion to weigh the needs of the team as well as the needs of the individual athlete. The alleged tortious act in this case, the coaches' decision to let Christopher run, does not need to *effect* policy as Strickland's argument is suggesting; it need only *involve* policy. We agree with the Court of Appeals that the coaches' actions that day did involve social and economic policies. RCDS's policy for the coaches to be certified in first aid and to administer first aid requires the coaches to make decisions regarding whether a student is capable of participating in a sporting event. These policies were involved in the decision to allow Christopher to run his race.

¶35. Therefore, I cannot join the majority because the sole issue that is before this court is whether RCSD is immune under the MTCA, not whether the evidence of negligence was sufficient. Moreover, RCSD would be immune under the MTCA in this case.

**RANDOLPH, C.J., JOINS THIS OPINION IN PART.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶36. Respectfully, I dissent. I would hold that the allegation that Christopher Strickland's coaches allowed him to run in a cross-country competition after he reported a wasp sting was an allegation of ordinary negligence for which the school district does not enjoy immunity. I agree with Justice Ishee's position that "whether Strickland could prove negligence was not at issue on summary judgment" and that therefore "[i]t is fundamentally unfair for the majority to fault Strickland for having no evidence of negligence when he was never put on notice he had to come forward with that evidence prior to trial." CIRO Op. ¶ 21. The allegedly tortious conduct giving rise to Strickland's claim was the coaches' discretionary

16

call to allow Christopher Strickland to run the race. I would go further and find that the coaches' decision did not involve social, economic, or political policy. Their assessment of Christopher Strickland's physical condition was an isolated occurrence. They did not base their decision on public policy considerations, but rather on their appraisal of the physical condition of a single student. If it were to adopt the approach taken by the Court of Appeals below, I believe that this Court would give validity to an artificial approach that threatens to lend to all day-to-day coaching decision the imprimatur of public policy.

¶37. The Mississippi Tort Claims Act provides that

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused[.]"

Miss. Code Ann. § 11-46-9(1)(d) (Rev. 2019). In *Wilcher v. Lincoln County Board of Supervisors*, 243 So. 3d 177, 187 (Miss. 2018), this Court re-adopted the two-part public policy function test for determining questions of discretionary function immunity. Under the first part of the test, the Court must decide "whether the activity in question involved an element of choice or judgment." *Id.* The second part of the test requires deciding "whether that choice or judgment involved social, economic, or political-policy considerations." *Id.*

¶38. This Court long has recognized that, because not all decisions that employ discretion involve public policy considerations, not every decision employing discretion is protected by discretionary function immunity. *Id.* at 182 (quoting *Jones v. Miss. Dep't of Transp.*, 744 So. 2d 256, 260 (Miss. 1999), *overruled by Brantley v. City of Horn Lake*, 152 So. 3d 1106,

17

1112 (Miss. 2014), *overruled by Wilcher*, 243 So. 3d at 185). "Instead, 'only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected.'" *Id.* (quoting *Jones*, 744 So. 2d at 260). "Because discretionary-function immunity 'protects only governmental actions and decisions based on considerations of public policy,' when 'applying the discretionary-function exception, this Court must distinguish between *real policy decisions* implicating governmental functions and *simple acts of negligence* which injure innocent citizens.'" *Id.* at 188 (quoting *Pratt v. Gulfport-Biloxi Reg'l Airport Auth.*, 97 So. 3d 68, 75 (Miss. 2012) (Waller, C.J., dissenting), *overruled by Wilcher*, 243 So. 3d at 188). Our focus must be "on the nature of the actions taken and whether they are susceptible to policy analysis." *Id.* (internal quotation marks omitted) (quoting *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)).

¶39. The Court of Appeals applied pre-*Wilcher* decisions to find that "a school district's discretionary decision to allow coaches the ability to set and conduct practices is rooted in policy[.]" *Strickland ex rel. Strickland v. Rankin Cnty. Sch. Dist.*, No. 2019-CA-01669-COA, 2021 WL 2327700, at *3-4 (Miss. Ct. App. June 8, 2021) (quoting *Covington Cnty. Sch. Dist. v. Magee*, 29 So. 3d 1 (Miss. 2010)). I agree with the dissent authored by Chief Judge Barnes, which posited that the pre-*Wilcher* decisions relied upon by the Court of Appeals majority applied an overly broad approach to defining public policy under the discretionary function immunity test. *Id.* at *5 (Barnes, C.J., dissenting). In fact, *Wilcher*

recognized that not all of the Court's prior decisions applying the public policy function test had done so correctly. *Wilcher*, 243 So. 3d at 188.

¶40.    In *Harris ex rel. Harris v. McCray*, 867 So. 2d 188, 189 (Miss. 2003), a student allegedly suffered heatstroke at a football practice that had been scheduled by the head football coach. The Court found that the coach's decisions involved an element of choice or judgment. *Id.* at 192. Then the Court, without examining whether the coach's decisions involved social, economic, or political policy, discussed the public policy implications that might arise if the Court were to hold that coaches and schools could be subject to liability for coaching decisions:

> While the facts of Victor Harris's case are no doubt tragic, we must realize the consequences of our decision today were we to find Coach McCray and the school district liable on the facts of this case. High school football coaches around the state would lose their ability to control their football teams. Discipline of a football team would become non-existent. If a coach refused a player's request to have a water break—to see a trainer—to not have to run any more wind-sprints—to not have to do any more one-on-one blocking/tackling drills, because of that player's complaint of "feeling weak" or "not feeling good" or simply "not feeling like it," that coach would be very much aware of the fact that he/she would be running the risk of being successfully sued along with other school officials and the school district, should that player later suffer physical/medical problems related to the coach's failure to cow to the player's every whim and wish. On the other hand, if the coach, in fear of a successful lawsuit, should cow to the player's every whim, wish and demand, then the coach would lose the respect of the players, and discipline and morale would be lost.

*Id.* at 193. The Court explicitly expressed reservations about allowing schools to be held liable for coaching decisions: "We must balance the serious negative repercussions which could result for all extra-curricular school activities if the discretionary decisions of coaches are not exempt from liability pursuant to Miss. Code Ann. § 11-46-9(1)(d) with the need for

19

providing a well-rounded education." *Id.* at 192. Because *Harris* did not analyze whether a coach's decisions regarding a student's athletic practicing involved social, economic, or political policy, the decision was one of those that applied the public policy function test incorrectly.

¶41. Subsequent cases relied on *Harris* to find that various coaching decisions involved public policy. In *Magee*, 29 So. 3d at 3 (Miss. 2010), the wrongful death beneficiaries of a student who had died of heatstroke at football practice sued the school district. In that case, the Court addressed whether the school's decisions regarding football practice involved social, economic, or political policy. *Id.* at 7-8. The Court quoted extensively from *Harris*, finding that "[t]he District's discretionary decision to allow coaches the ability to set and control practice is rooted in policy—coaches know their players and must be able to control their teams." *Id.* at 8. Because the record was not developed sufficiently in *Magee*, the specific decisions that allegedly had caused the student's death were not discussed. *Magee* stands for the proposition that a school district's decision to allow coaches to control practices is rooted in social, economic, and political policy. *Id.* at 8. Although *Magee* found that immunity extended to a school district's overarching decision to permit coaches to control practices, it did not hold that immunity extends automatically to all of the myriad individual decisions made by coaching staff during practice. *Id.* at 8.

¶42. In another case, the Court of Appeals relied on *Magee* to hold that a physical education teacher's decision to make students "run the bleachers" was protected by discretionary function immunity, holding that "regulating the establishment and operation

20

of athletic programs and other school activities, such as physical-education classes, constitutes an exercise of political policy, thus satisfying the second prong of the discretionary-function analysis." *Clein v. Rankin Cnty. Sch. Dist.*, 78 So. 3d 384, 389 (Miss. Ct. App. 2012). *Clein* relied on the same faulty reasoning articulated by *Harris* that a school district's decision to adopt a particular sports program or to have coaches control such a program immunizes all decisions made by coaches or school personnel within that program under all circumstances.

¶43. As Chief Judge Barnes observed in her dissent in this case, the appropriate application of the public policy function test is found in *Bailey v. City of Pearl*, 282 So. 3d 669 (Miss. Ct. App. 2019), and illustrated by this Court's overruling of *Pratt*, 97 So. 3d 68. In *Bailey*, an unsecured gate speared a car at a city ballpark, resulting in a woman's death. *Bailey*, 282 So. 3d at 671. The Court of Appeals found the City immune from liability for allegations of negligent adoption of safety protocols and negligent design and construction of the park, because those decisions involved public policy considerations. *Id.* at 671-72. But it was not shielded from liability for negligent maintenance, specifically, for its failure to secure the gate. *Id.* at 672. In *Pratt*, this Court held that a municipal airport's allegedly negligent placement of slip resistant tape on stairs was shielded by discretionary function immunity. *Pratt*, 97 So. 3d at 75. *Pratt* reasoned that, because the municipality's overarching decision to have a municipal airport involved social, economic, or political policy, the placement of slip resistant tape on stairs, as well as other operational functions of the airport, fell within

the ambit of public policy decisions. *Id. Wilcher* overruled *Pratt* because its reasoning "stretched all bounds of 'policy' beyond credulity." *Wilcher*, 243 So. 3d at 188.

¶44.   I reject an approach that would create an exception for sports programs from the ordinary, accepted manner in which this Court applies the public policy function test and that would immunize the most mundane coaching decisions that impact students' welfare so long as they occur under the protective umbrella of a sports program. That result contravenes the public policy function test, which requires focus on the act alleged to have caused harm. As stated succinctly by Chief Judge Barnes,

> The district is not immune simply because the injury occurred within a cross-country athletic program any more than *Pratt* can be followed in finding all that occurs in a municipal airport qualifies for immunity. The proper analysis requires identification of the specific activity that gave rise to the claim—here the coaches' decision to require Christopher run the race after being stung by a wasp. While the decision was discretionary, it was an isolated event involving one student and is not based on public policy considerations.

*Strickland*, 2021 WL 2327700, at *6 (Barnes, C.J., dissenting).

¶45.   No party argues that the school district was negligent by deciding to have a cross-country athletic program or to train coaches in first aid, decisions that would appear to be rooted in social, economic, or political policy. Rather, the alleged negligence consists of the coaches' decision to let Christopher run the race. That decision was a simple judgment call that did not involve social, economic, or political policy. I would hold that, under a proper application of the public policy function test, the coaches' decision to permit Christopher Strickland's participation in the race after his wasp sting was not protected by discretionary function immunity.

22

**KING, P.J., JOINS THIS OPINION.**